255 So.2d 338

**Linda STEPHENS**

v.

**Donnie Ray STEPHENS.**

**5 Div. 18.**

Court of Civil Appeals of Alabama.

Dec. 1, 1971.

James D. Straiton, Montgomery, for appellant.

George P. Howard, Wetumpka, for appellee.

BRADLEY, Judge.

On April 3, 1970 the appellant here, Linda Stephens, filed suit for divorce in the Circuit Court of Elmore County against the appellee, Donnie Ray Stephens, on the ground of cruelty. Linda, in her bill of complaint also sought custody of and support for their four year old daughter Sandy. Donnie Ray filed an answer and cross-bill wherein he denied the cruelty and alleged that Linda was guilty of adultery. Linda denied the allegation of adultery.

Trial was had on May 22, 1970 resulting in a decree of divorce in favor of Donnie Ray due to Linda's adultery. The trial court thereupon awarded custody of the child to Donnie Ray for two months and to Linda for two months. A condition of this arrangement, however, was that the child was to be kept in the home of its grandparents during the periods when each of its parents was exercising their custody rights. This custody arrangement was to continue until the child reached the age of six, at which time the court would enter further orders. Donnie Ray was further ordered to pay $100.00 per month as support for the child during the period that it was in the mother's custody.

At the time of the filing of the bill of complaint and the cross-bill, Linda was living with her mother and step-father in Birmingham, and Donnie Ray was living with his parents in Millbrook.

On August 21, 1970 Donnie Ray filed a petition for modification of the decree of May 22, 1970, contending that Linda had violated that provision of the divorce decree requiring the child to be kept at

Linda's parents' house during the period in which she had custody of her daughter. Donnie Ray asked the trial court to give him and his parents full custody of the child. Linda filed a demurrer to the petition and also filed a cross-petition asking the court to give her full custody of her daughter on the ground that her former husband had enlisted in the Marine Corps and would be gone for an indefinite period of time and would be unable to care for the child. She further alleged that she was gainfully employed and was willing and able to care for her child.

After a hearing thereon, the court, on September 14, 1970, modified the decree of May 22, 1970 to the extent that Donnie Ray was given full custody of the child so long as it was kept at his parents' home. Donnie Ray was also relieved of support payments, and Linda was given reasonable visitation rights.

Linda then filed a petition asking for a rehearing; this was denied, and she thereupon appealed to this court from the September 14, 1970 decree.

The evidence submitted at the hearing on the petition for modification tended to reveal these facts. At the time of the divorce, Linda and Donnie Ray had been married for about five years. Their daughter was then about four years old.

Most of the marriage years were spent living with Donnie Ray's parents. During this time Donnie Ray operated a service station in Millbrook, and he was still operating the station at the hearing on the petition for modification.

Linda's parents are divorced. Her father lives in Millbrook, and her mother, who remarried, lives in Birmingham. Linda's mother and step-father occupy a three bedroom house in which Linda's sister and brother also live. Although it was not made known to the trial court at the hearing on the divorce petition, Linda's mother had cancer. After the divorce decree and between the time of the filing of the petition for modification and the hearing thereon, the mother's condition worsened to the point that she was placed in a hospital with a terminal prognosis.

Donnie Ray lived with his mother, father and brother in a three bedroom house in Millbrook. The evidence showed that the father was a diabetic and had glaucoma. Donnie Ray's mother had been employed as a saleslady in a store in Montgomery, but was not so employed at the hearing on the modification petition. She testified that she would help look after Donnie Ray's service station while he was in the Marine Corps if they were unable to sell it. She also stated that she loved Donnie Ray's child and would raise it as her own.

The evidence showed that Linda had rented an apartment in a low-rent housing project about three days before the final decree of divorce was granted, and lived there during the months of June and July 1970. The evidence is in dispute over whether Linda and Sandy lived in Linda's apartment or lived at her mother's house during August and September of 1970. The evidence does show that Linda enrolled Sandy in a nursery school close to the apartment right after she obtained custody for her two month period which began on August 1, 1970. Linda testified that she and Sandy spent the nights at her mother's house up until the time her mother was placed in the hospital, which was a few days before the hearing on the petition, because her mother was too ill to care for Sandy during the day.

Donnie Ray and his parents testified that they called Linda's mother's home at various times during the day and night on several occasions, and Linda and Sandy were not at the mother's house.

Donnie Ray also stated that Linda told him that she had moved Sandy to her apartment because of her mother's illness and crowded conditions at her mother's house.

The only evidence relating to Linda's unfitness to be a mother was the references to the basis on which the original decree was granted, which was adultery.

Appellant contends that the trial court erred in its modification decree by awarding custody to Donnie Ray when he was going into the Marine Corps the next day. She said the effect of this decree was to take custody from the natural mother and give it to the father's parents for the sole reason that her mother had become so ill that it was not feasible nor practicable to keep the child in her house all of the time.

A careful reading of the record convinces us that the trial court awarded full time custody to Donnie Ray for the reason that the child could not stay in the house of Linda's parents all the time due to the illness of Linda's mother.

■ Where there has been a decree of a court of competent jurisdiction, fixing the custody of a child, this is conclusive of its interests and the rights of the parents, so long as the status remains without material change from the time of the decree or there be facts brought to light which were unknown at the time of the final decree. Sparks v. Sparks, 249 Ala. 352, 31 So.2d 313. The burden of showing a material change in circumstances or other substantial reasons for modification is on the one seeking a change in the custody of the child. Messick v. Messick, 261 Ala. 142, 73 So.2d 547.

Donnie Ray sought a change in custody of the child and attempted to show that there had been a change in circumstances since the decree awarding joint custody to both him and Linda.

His main ground for saying that there had been a change in circumstances sufficient to warrant a modification of the custody of his daughter was that his former wife was no longer living in the house of her mother and did not keep the child in her mother's house during the time she had custody.

He also made known to the court that Linda's mother's affliction was not made known to the court at the time of the original decree.

He further pointed out to the court, on the modification hearing, that his divorce had been granted for the adultery of his wife.

■ The fact that the divorce was granted to Donnie Ray based on the adulterous conduct of Linda does not forever bar Linda from having custody of their baby girl should the welfare and best interests of the child warrant a change in the custody, but it is a circumstance to be considered by the court in deciding where custody of the child shall be placed. Easterling v. Caton, 260 Ala. 543, 71 So.2d 835.

The original decree provided that Donnie Ray should have custody of Sandy for two months and Linda should have her for two months; provided the child was kept in the home of the respective grandparents during said period of custody.

We must consider that the trial judge decreed that custody of the parents be exercised in the homes of the grandparents due to the ages and experience of the parents. Donnie Ray was about 23 years old and Linda was 20 years old; and they had lived most of their married life with his parents, and when Linda left Donnie Ray she went to live with her mother. And we are of the opinion that the requirement that the child be kept in the home of the respective grandparents was the basis on which the trial court gave custody of Sandy equally to Linda and Donnie Ray; otherwise there would probably have been some other custody arrangement. Furthermore, had the trial court known of Linda's mother's illness at the time of the final decree, it probably would have made other arrangements for Sandy's custody.

We consider the evidence supportive of the trial court's conclusion on the petition to modify that due to her mother's illness, Linda will not be able to keep Sandy in her mother's house as required by the final decree.

■ Even though Linda had obtained gainful employment, was making every effort to care for Sandy—for which she is to

be commended—and had no control over the circumstances that required her to take Sandy away from her maternal grandmother's house, we cannot say that the requirement of the final decree that the custody of Sandy be fulfilled in the home of her grandparents was not a valid one.

And we must assume, and do, that the paramount consideration of the trial court in decreeing custody as it did was the best interests of the child.

There was no appeal from that decree, and we consider the rights of the parents to have been settled therein. Sparks v. Sparks, supra.

█ We consider the fact that custody cannot be carried out in Linda's mother's house to be a material change in circumstances authorizing the decree rendered in response to the petition for modification. The trial judge rendering the modification petition was cognizant of the reservation of jurisdiction in the final decree so as to permit the trial court to re-examine the custody arrangement of Sandy when she reaches six years of age.

When that time comes the court will have to consider that custody of Sandy, for at least nine months of the year, will have to be placed with someone so that the child can attend school.

Circumstances and conditions at that time may be such that the trial court will decree an entirely different custody arrangement than the one we now have before us, and this certainly would be its prerogative and responsibility; and we would also point out that it will only be a few months before Sandy's sixth birthday, and we do not believe—keeping always in mind that Sandy's welfare is our prime consideration—that any change in her custody arrangement at this time would be in her best interests.

We therefore affirm the modification decree of the trial court rendered on September 14, 1970.

Affirmed.