BRYAN, Judge.
A.W. (“the mother”) appeals from a judgment of the Fayette Circuit Court awarding custody of J.W. (“the child”) to K.L.W., Jr. (“the father”). We reverse.
The child was born in January 2005, and the parties were divorced on May 9, 2006, by the Fayette Circuit Court. The divorce judgment awarded the parties joint legal custody of the child and awarded primary physical custody to the mother.
On October 1, 2007, the father filed a petition to modify custody of the child and a motion for an ex parte order, seeking pendente lite custody of the child. The father alleged that the mother had a “drug addiction” and that he feared for the safety of the child. The father attached a “Delegation of Parental Authority” pursuant to § 26-2A-7, Ala.Code 1975, signed by the mother on September 24, 2007, that granted the father temporary and “limited power of attorney granting physical custody and authority to make any decision relating to the child[]’s physical custody, health, education, and maintenance.”[1]
On November 6, 2007, the trial court entered a pendente lite order awarding custody of the child to the father, and it awarded unsupervised visitation to the mother upon certain conditions being met. Specifically, the court required the mother to release the results of her drug screens and required the Fayette County Department of Human Resources (“the Fayette County DHR”) to “perform a walk through” of the mother’s residence. The trial court further ordered that the child was not to visit the home of her maternal grandmother and that she was not to “be in the presence of’ C.A., the child’s maternal stepgrandfather, “at any time.”
The Marion County Department of Human Resources (“the Marion County DHR”) conducted a home study of the mother; the Fayette County DHR conducted a home study of the father. Regarding the mother’s report, the Marion County DHR found that
“[the mother] is taking drug test weekly and stated that she has been clean since she started Begin Again [a drug-rehabilitation program], in September 2007. She is showing responsibility by going to the meeting twice a week in Fayette. The apartment is adequate for [the mother and the child]. [The mother’s] home is clean and safe.”
The Fayette County DHR’s home study of the father’s residence found that the father’s home was “safe” and that the father and his wife “both love [the child] and seem to care for her well being.”
On March 26, 2008, the father filed a “Verified Motion for Emergency Relief and Suspension of Contacts/Visits.” The father alleged that the mother had allowed contact between the child and C.A. and that the child had been “physically assaulted or abused” by C.A. As a result, the child had been taken to Decatur General Hospital and a physical exam of the child had been conducted. The Morgan County Department of Human Resources (“the Morgan County DHR”) subsequently be *560 gan an investigation of the allegations made against C.A. by the child.
On April 3, 2008, the trial court heard ore tenus evidence on the father’s petition to modify custody of the child. At the time of the hearing, the Morgan County DHR had not completed the investigation of C.A. At the close of the hearing, the trial court issued an interim order, pending resolution of the Morgan County DHR’s investigation of the charges against C.A., allowing certain visitation rights to the mother.
On May 27, 2008, the mother filed a petition for a rule nisi, asserting that the Morgan County DHR had completed its investigation of C.A. and had found that the allegations against him were “not indicated.”
The trial court entered its final order on July 29, 2008, finding that “there has been a material change of circumstances as to custody and that the inherently disruptive effect of such a change in the physical custody as stated herein would be overcome by the beneficial effects of the change.” The trial court ordered that the parties continue to exercise joint legal custody of the child, but it awarded primary physical custody of the child to the father. The mother was awarded custody of the child during the summer, beginning one week after the end of school until one week before school begins. The trial court denied the mother’s petition for a rule nisi.
On August 19, 2008, the mother filed a motion for a new trial or, in the alternative, to alter, amend, or vacate the trial court’s judgment, pursuant to Rule 59, Ala. R. Civ. P. The mother alleged that the father’s only allegation in support of his petition to modify custody of the child was that she had a “drug addiction.” The mother further argued that the father had “failed to present sufficient evidence demonstrating a material change in circumstances” and that the father had failed to show that the mother’s drug use “was detrimental to [the child].” The trial court denied the mother’s postjudgment motion on September 22, 2008. The mother timely appealed.
On appeal, the mother argues that the trial court erred in modifying custody of the child because, she alleges, the father failed to present evidence to support a finding that a material change in circumstances had occurred since the original award of custody to the mother.
In Adams v. Adams, 21 So.3d 1247, 1252 (Ala.Civ.App.2009), this court stated that “[a] parent seeking to modify a custody judgment awarding primary physical custody to the other parent must meet the standard for modification of custody set forth in Ex parte McLendon [, 455 So.2d 863 (Ala.1984) ].” We reiterated the McLendon standard in McCormick v. Ethridge, 15 So.3d 524, 527 (Ala.Civ.App.2008), as follows:
“After custody has been awarded in a divorce judgment, the noncustodial parent seeking a change of custody must demonstrate (1) ‘that he or she is a fit custodian’; (2) ‘that material changes which affect the child’s welfare have occurred’; and (3) ‘that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child.’ Kunkel v. Kunkel, 547 So.2d 555, 560 (Ala.Civ.App.1989) (citing, among other cases, Ex parte McLendon, 455 So.2d 863, 865-66 (Ala.1984) (setting forth three factors a noncustodial parent must demonstrate in order to modify custody)).”
We further noted in Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala.Civ.App.2007), that “appellate review of a judgment modifying custody when the evidence was presented ore tenus is limited to determining wheth *561 er there was sufficient evidence to support the trial court’s judgment. See [Ex parte] Patronas, 693 So.2d [473,] 475 [ (Ala.1997) ].”
The following pertinent testimony was received at trial. The Fayette County DHR received an anonymous report regarding the mother’s drug use on September 23, 2007. The mother testified that she had smoked methamphetamine (“crystal meth”) one time with the father’s mother and that the father’s mother had “turned her in” to the Fayette County DHR. She denied being addicted to crystal meth, but the mother did admit an addiction to Lortab, a narcotic pain reliever.
In September 2007, the mother enrolled in a drug-rehabilitation program called “Begin Again” that was administered through the Northwest Alabama Mental Health Center. She completed the Begin Again program in February 2008, and then began attending a Narcotics Anonymous group meeting every week. At the April 2008 hearing, the mother testified that she had not used any type of narcotic in six months. On December 18, 2007, the mother received notice from the Fayette County DHR that it was closing the investigation of the mother regarding her drug use because there was insufficient evidence to support a finding that the mother had placed the child “at risk of serious harm.”
The mother testified that she lives in a one-bedroom apartment but that she would be eligible for a two-bedroom apartment if custody of the child were returned to her. The mother had been employed as a gas-station clerk for approximately two months earning $5.90 an hour. Her schedule fluctuates, but she has every Friday and Sunday off. The mother stated that she would enroll the child in day care so that she could continue working. She further stated that her mother had agreed to come to her apartment and babysit the child if the mother had to work late.[2]
The father was unemployed at the time of the hearing, but he was actively seeking a new job. The father receives $728 a month in disability payments from the United States Department of Veterans Affairs. The father is remarried and lives with his wife, their daughter, his stepdaughter, and his wife’s grandmother. At the time of the hearing, the children were 19 months old and 3 years old, respectively. The father testified that the child has a good relationship with everyone in his household.
The father testified that he doesn’t have any problem with the mother’s parenting skills. He stated that his only issue with the mother is that she visits C.A. and the child’s maternal grandmother often.
Keshia Stanley, a caseworker with the Morgan County DHR testified regarding the allegations made by the child against C.A. She testified that she received a telephone call from the mother regarding bruises on the child’s body and her concern that the child may have been sexually abused. Stanley then called the child’s stepmother, who was with the child, and the stepmother told Stanley that she was taking the child to Decatur General Hospital. Stanley met the child’s stepmother, step-great-grandmother, and the stepmother’s sister at the hospital. Stanley checked the child for bruises but did not find any. While Stanley was evaluating the child, the child made a statement, prompted by a leading question from the child’s step-great-grandmother, that indicated that C.A. had sexually abused the child. Stanley testified that she questioned the veracity of the child’s statement *562 because of the step-great-grandmother’s leading question and because the child later had trouble explaining who C.A. was and who he lived with.
Despite the presumption of correctness given to a trial court’s judgment after hearing evidence ore tenus, Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), we conclude that the evidence presented at trial does not support the trial court’s finding that a material change in circumstances that affected the welfare of the child had occurred since the entry of the original custody award in favor of the mother.
There is no dispute that the father meets the first requirement of the McLen-don standard, that is, that he is a “fit custodian.” The mother argues that the father failed to meet the second requirement of the McLendon standard because, she says, he failed to prove “ ‘that material changes which affect the child’s welfare have occurred.’ ” See McCormick v. Ethridge, 15 So.3d at 527. The trial court made no specific findings of fact regarding its holding “that there has been a material change of circumstance as to custody.” This court has often stated that “ ‘[w]here a trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.’ ” Ex parte Fann, 810 So.2d 631, 636 (Ala.2001) (quoting Lemon v. Golf Terrace Owners Ass’n, 611 So.2d 263, 265 (Ala.1992)).
Because the father, in his petition to modify, alleged only that he was in fear of the child’s safety because of the mother’s “drug addiction,” we must assume that the trial court found that the mother’s admitted addiction to Lortab was a material change that affected the child’s welfare. Therefore, we must determine if there was sufficient evidence to support the trial court’s implicit finding that the mother’s drug addiction constituted a material change in circumstances that affected the welfare of the child. See Ex parte Patronas, supra.
The mother testified that she had passed every drug test administered to her since she began treatment with Begin Again in September 2007, that she had successfully completed the Begin Again program in February 2008, and that she attended “aftercare” meetings with Narcotics Anonymous even though she was not required to do so. Further, the Fayette County DHR was unable to find sufficient evidence to prove that the mother had put the child at risk of serious harm. The father offered no evidence to indicate that the mother’s rehabilitation had been anything but a success. In short, there was no evidence indicating that the mother’s drug use had affected the welfare of the child.
In B.S.L. v. S.E., 875 So.2d 1215 (Ala.Civ.App.2003), we reversed an order of the trial court modifying custody of a child on the basis that the father, who had petitioned for the modification of custody, had failed to demonstrate that there was a material change in circumstances since the entry of the original custody award to the mother. In B.S.L., “the sole basis for [the father’s] petition to modify custody was the mother’s drug and alcohol addiction.” 875 So.2d at 1224. This court reversed the award of custody to the father because the mother “recognized her problem, voluntarily sought treatment, and had been successful in her recovery for the two years preceding the hearings.” Id.
Although the evidence in this case indicates that the mother sought treatment for her drug addiction only after a report was made to the Fayette County DHR, like the mother is B.S.L., the mother in this case successfully completed treatment for her *563 drug addiction, and all the evidence presented at the final hearing indicates that the mother has fully recovered from her drug addiction. The mother has also shown that she is determined to remain drug-free by voluntarily attending Narcotics Anonymous meetings.
The father did not allege in his petition for custody modification that the child’s allegations of sexual abuse against C.A. constituted a material change in circumstances. However, we find that that issue was tried by the consent of the parties, and we will address it briefly in regard to whether the unsubstantiated allegation of abuse could have constituted a material change in circumstances sufficient to warrant a modification of custody. A.L. v. S.J., 827 So.2d 828, 833 (Ala.Civ.App.2002) (“where an issue not pleaded by a party is tried before the trial court without an objection by another party, that issue is deemed to have been tried by the implied consent of the parties” (citing Rule 15(b), Ala. R. Civ. P.)).
We first note that the allegation of abuse was not made against the mother, the primary caretaker of the child and the party seeking to maintain custody of the child. Furthermore, we note that the Morgan County DHR completed an investigation of the child’s claims against C.A. and found that there was insufficient evidence to substantiate the allegation.
In A.M.J. v. K.D.J., 777 So.2d 146 (Ala.Civ.App.2000), we held that only abusive conduct perpetrated by parties seeking custody triggers the provisions of the Custody and Domestic or Family Abuse Act (“the Act”), § 30-3-130 et seq., Ala.Code 1975. The Act contains a presumption found in § 30-3-131, Ala.Code 1975, that states “that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence.” The father never alleged that the mother was a perpetrator of domestic or family violence. Therefore, there is no presumption that it is not in the best interest of the child for the mother to have sole custody, joint legal custody, or joint physical custody of the child. The fact that the mother’s stepfather was investigated by the Morgan County DHR, which found the allegations of sexual abuse to be unsubstantiated, is insufficient to demonstrate that a material change in circumstances sufficient to modify custody of the child from the mother had occurred.
The father also alleged that the mother had violated an order of the trial court by allowing C.A. to have contact with the child. However, the evidence presented by the father at the final hearing does not support this allegation. At the final hearing, the father admitted that he had made that allegation only because someone had told him that they had seen the mother’s car at the maternal grandmother’s house, where C.A. resides. The mother adamantly denied allowing any physical contact between the child and C.A.
The trial court made no findings regarding the alleged sexual abuse of the child, and there is no way to discern, based on the judgment of the trial court, if the trial court considered the allegations of abuse in making its determination that there was a material change of circumstances. However, we conclude that the unsubstantiated allegation of abuse regarding C.A. is insufficient to demonstrate that a material change in circumstances sufficient to modify custody of the child from the mother to the father has occurred.
We note that this court has frequently emphasized that “ ‘[a] change in custody from one parent to another is not a decision to be made lightly.’ ” B.S.L., 875 So.2d at 1224 (quoting Glover v. Singleton, *564 598 So.2d 995, 996 (Ala.Civ.App.1992)). We also recognize the ore tenus presumption in favor of the trial court’s judgment; however, “we are not constrained to affirm a judgment of the trial court when the evidence fails to support the findings upon which that judgment is based.” Sloane v. McQuinn, 836 So.2d 908, 910 (Ala.Civ.App.2002) (citing Andrews v. Andrews, 495 So.2d 688 (Ala.Civ.App.1986)). We conclude that the judgment of the trial court must be reversed because the father failed to present sufficient evidence demonstrating a material change in circumstances that affected the welfare of the child since the entry of the original custody determination in favor of the mother.
REVERSED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. Section 26-2A-7(a), Ala.Code 1975, states, in pertinent part, that "[t]emporary 'delegation’ of parental powers does not relieve the parent or guardian of the primary responsibility for the minor ....” We note that the mother signed this temporary delegation of authority immediately preceding her entry into Begin Again, a drug-rehabilitation program.

. The mother testified that she usually has to work until 11:00 p.m. three days a week.