BRYAN, Judge.
J.W. (“the paternal grandfather”) and S.W. (“the paternal grandmother”) (hereinafter collectively referred to as “the paternal grandparents”) and L.W. (“the father”) appeal from a judgment of the Coffee Juvenile Court that modified custody of F.C.W. (“the child”).

Procedural History

On July 21, 2008, the juvenile court, pursuant to a finding of dependency, awarded joint legal custody of the child to the paternal grandparents and S.B. (“the maternal grandfather”) and J.B. (“the maternal grandmother”) (hereinafter collectively referred to as “the maternal grandparents”). Physical custody of the child was awarded to the paternal grandparents. The parties subsequently submitted an agreed-upon visitation schedule that awarded the maternal grandparents visitation with the child and awarded C.B. (“the mother”) and the father visitation with the child at times agreed upon by the mother and the father and the paternal grandparents. A separate provision in the visitation agreement awarded the mother visitation with the child so long as it was supervised by either the maternal grandparents or the paternal grandparents, depending on which set of grandparents was exercising custody of the child at the time the mother requested visitation. The visitation agreement included a provision that stated: “The paternal and maternal grandparents acknowledge that the ultimate goal for [the child] is to see her reunited with [the mother and the father] and will work toward that end.”
On June 9, 2009, the mother filed a “motion for hearing” seeking to be reunited with the child. The mother alleged that she had completed a drug-rehabilitation program and that she had obtained employment. The juvenile court subsequently entered an order that stated that the mother’s June 9, 2009, motion for hearing would be treated as a petition to modify custody of the child because the child’s dependency and custody had been finally adjudicated pursuant to the July 2008 judgment.
The juvenile court conducted an ore ten-us hearing on the mother’s custody-modification petition on August 31, 2009, and entered a judgment modifying custody of the child on December 29, 2009. In that judgment, the juvenile court concluded that the proper custody-modification standard to be applied was the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). Based on that conclusion, the juvenile court found that the mother had demonstrated that a material change in circumstances had occurred since the entry of the July 2008 judgment in that an irretrievable breakdown in communication had developed between the maternal grandparents and the paternal grandparents and between the paternal grandparents and the mother, to the detriment of the child. The juvenile court also found that the positive good brought about by a change in custody would more than offset the disruption caused by the change in custody. Pursuant to those findings, the mother was awarded legal and physical custody of the child, the father was awarded supervised visitation with the child, and the father was ordered to pay child support.
The father and the paternal grandparents filed separate postjudgment motions, pursuant to Rule 59, Ala. R. Civ. P., for a new trial or, in the alternative, to alter, amend, or vacate the juvenile court’s judgment. The paternal grandparents requested a hearing on their motion, and they alleged that the judgment was not supported by the evidence, that the evidence was insufficient to support the judgment, and that newly discovered evidence *696 existed that indicated that false or misleading testimony had been given at the ore tenus hearing that was directly related to the best interests of the child. The father, in his postjudgment motion, challenged certain provisions of his visitation award. The juvenile court denied the paternal grandparents’ and the father’s post-judgment motions, and the paternal grandparents and the father filed sepai-ate notices of appeal to this court. This court consolidated the appeals filed by the father and the paternal grandparents ex mero motu.

Issues

On appeal, both the father and the paternal grandparents challenge the juvenile court’s finding that the mother met her custody-modification burden pursuant to Ex parte McLendon. The paternal grandparents also challenge the juvenile court’s failure to conduct a hearing on their post-judgment motion in violation of Rule 59(g), Ala. R. Civ. P.

Facts

The child was born in November 2006, and she was almost three years old at the time of the ore tenus hearing. The child had lived in the paternal grandparents’ home, at times with the mother, since she was approximately six weeks old. The mother, who was 35 years old at the time of the ore tenus hearing, lived in Metairie, Louisiana. The mother stated that she had voluntarily sought substance-abuse treatment with the Family House substance-abuse program after the entry of the July 2008 judgment. The Family House substance-abuse program required the mother to live in an onsite facility, and the mother participated in that program from July 31, 2008, until February 2009. The mother moved into a two-bedroom townhouse in February 2009 in what she described as a quiet neighborhood. The mother’s rent was subsidized so that she had to pay only 30% of the monthly rent due. The mother worked as a secretary at a real-estate company 30 hours each week, and she earned approximately $10.50 an hour.
The mother had three children: a 14-year-old son, the child, and an 8-month-old daughter. The mother had joint legal custody of her oldest child, who lived 15 miles away from the mother’s home in Metairie. According to the mother, she had visitation with her oldest child every other weekend and the “whole summer.” The mother gave birth to her third child in November 2008 while she was participating in the Family House substance-abuse program. According to the mother, she had cared for her youngest child since birth, even while she was participating in substance-abuse rehabilitation. The mother stated that she was certain that the father was the father of her youngest child but that the paternal grandmother had not asked to see her youngest child. The mother stated that she brought the youngest child with her during visitation exchanges with the child so that the paternal grandparents could see her youngest child.
The mother testified that, as of August 2009, she had not used illegal drugs in 14 months. The mother admitted that she had participated in a drug-rehabilitation program in 2004 and that she had continued to use illegal drugs after she had completed that program. The mother stated that she believed that she had control over her drug addiction and that she had a strong support system in Metairie, including the staff at Family House, her caseworker from a housing program, her mother, her father, and her stepparent. She admitted that she was not self-sufficient at the time of the ore tenus hearing and that she still needed people “to keep her in line” so that she could get to a point where she was self-sufficient. The mother *697 stated that she attended Alcoholics Anonymous and Narcotics Anonymous meetings and participated in substance-abuse aftercare.
Even though the mother had completed a drug-rehabilitation program in February 2009, the paternal grandmother testified that she did not think that the mother was ready to receive custody of the child because the mother had completed a drug-rehabilitation program in 2004 and was arrested on drug-related charges 13 months later. The paternal grandmother stated that the mother needed more time to demonstrate that she was not going to relapse into drug use because of the mother’s history of making efforts to improve her situation and then “backsliding.” The paternal grandmother would not state a specific period of how long the mother would have to maintain her independence from drugs before she was satisfied that the mother could adequately care for the child, but the paternal grandmother stated that she wanted the child to return to the mother’s or the father’s custody once it was safe for the child.
The paternal grandmother admitted that the mother had an eight-month-old child that lived with the mother and was cared for by the mother and that she had not taken any steps to remove the mother’s youngest child from the mother’s custody. The paternal grandmother disputed the mother’s claims that she had not tried to see the mother’s youngest child. According to the paternal grandmother, she had made an effort to find out where the mother had given birth to her youngest child so that she could call the mother in her hospital room, but the maternal grandparents had told her that the mother did not want to speak to her. The paternal grandmother testified that she had filed motions with the juvenile court requesting information from the maternal grandparents in an effort to find out where the mother lived and where the child stayed when she went to Louisiana to visit the mother. The paternal grandmother stated that she got no response or very little response. According to the mother, no one had asked her where she lived and she did not think to tell the paternal grandparents because the father had her address. The paternal grandmother admitted that the father, who lived with the paternal grandparents after he was released from jail in early August 2009, had the mother’s address and that the father spoke to the mother regularly.
The mother and the maternal grandparents stipulated that the paternal grandparents had done an excellent job raising the child and that they had no issues with the way that the paternal grandparents were raising the child. The mother also admitted that the paternal grandparents had been the only consistent caregivers that the[1] child had ever known. The mother stated that she would like for the paternal grandparents to continue to see the child if she were awarded custody because it would hurt the child to cut off the relationship with the paternal grandparents.
The mother stated that she thought that she had done everything possible to get custody of the child back. The mother admitted that it would be an adjustment for the child to move into her home and only have visitation with the paternal grandparents, but the mother testified that the child did not have difficulty adjusting to her home when the child came to visit. The child had visited the mother for approximately 12 weeks between September 2008 and the time of the ore tenus hearing. The mother admitted that she had not provided any support for the child to the paternal grandparents, but she stated that her family had provided clothing for the child.
*698 The mother stated that she tried not to speak with the paternal grandparents at all because it made her extremely uncomfortable. According to the mother, supervised visits with the child at the paternal grandparents’ home were extremely tense and she avoided that situation so as not to harm the child. The mother admitted that the only communication she had with the paternal grandparents was at visitation exchanges and that she did not call the paternal grandparents while they had custody of the child. The mother thought that the paternal grandparents hated her, and she said that that feeling contributed to her inability to communicate with them. The paternal grandmother testified that she liked the mother. The mother stated that she had tried to be the “bigger person” by sending the paternal grandparents pictures of the child while she was exercising visitation with the child and by allowing the child to speak to the paternal grandparents during her visitation periods. According to the mother, the paternal grandparents did not telephone her.
The maternal grandfather testified that, at the child’s dependency proceeding in July 2008, he told the juvenile court that the mother should not have custody of the child. But, he testified, after monitoring the mother’s rehabilitation closely, he was convinced that the mother should have custody of the child returned to her. According to the maternal grandfather, the mother is a good mother to her youngest child and he would not hesitate to notify the juvenile court if he saw something about the mother that caused him to be concerned about the welfare of the child. The maternal grandfather testified that he believed that the child would easily adjust to living with the mother because there was never an adjustment period for the child during visitation periods with the mother.

Standard of Review

“On appellate review of custody matters, this court is limited when the evidence was presented ore tenus, and, in such circumstances, a trial court’s determination will not be disturbed ‘absent an abuse of discretion or where it is shown to be plainly and palpably wrong.’ Alexander v. Alexander, 625 So.2d 433, 434 (Ala.Civ.App.1993) (citing Benton v. Benton, [520 So.2d 534 (Ala.Civ.App.1988) ]). As the Alabama Supreme Court highlighted in {Ex parte ] Patro-nas, [693 So.2d 473 (Ala.1997) ], ‘ “[T]he trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.” ’ Patronas, 693 So.2d at 474 (quoting Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996)). Thus, appellate review of a judgment modifying custody when the evidence was presented ore tenus is limited to determining whether there was sufficient evidence to support the trial court’s judgment. See Patronas, 693 So.2d at 475.”
Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala.Civ.App.2007).

Discussion

We will address the argument made by the father and the paternal grandparents that the juvenile court erred by concluding that the mother had met the custody-modification burden set forth in Ex parte McLendon, supra.[1]
*699 The juvenile court properly concluded that the McLendon standard applied to the mother’s request for custody of the child. See M.B. v. S.B., 41 So.3d 79 (Ala.Civ.App.2009). Pursuant to that custody-modification burden, the mother, as the noncustodial parent seeking a change of custody, was required to demonstrate
“ ‘(1) “that ... she is a fit custodian”; (2) “that material changes which affect the child’s welfare have occurred”; and (3) “that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child.” Kunkel v. Kunkel, 547 So.2d 555, 560 (Ala.Civ.App.1989) (citing, among other cases, Ex parte McLendon, 455 So.2d 863, 865-66 (Ala.1984) (setting forth three factors a noncustodial parent must demonstrate in order to modify custody)).’ ”
AW. v. K.L.W., 27 So.3d 558, 560 (Ala.Civ.App.2009) (quoting McCormick v. Ethridge, 15 So.3d 524, 527 (Ala.Civ.App.2008)).
A review of the record reveals that there was evidence to support the juvenile court’s implicit finding that the mother was fit to care for the child. The evidence indicated that the mother had cared for her eight-month-old daughter for that child’s entire life and that neither the maternal grandparents nor the paternal grandparents thought it necessary, for the welfare of that child, to seek to remove her from the mother’s custody. The mother testified that she had been drug-free for 14 months and that she had obtained a stable home and stable employment, and the maternal grandfather testified that he saw no reason why the mother could not care for the child.
Regarding the second prong of the McLendon standard, this court has held:
“In order to prove a material change of circumstances, the noncustodial parent must present sufficient evidence indicating (1) that there has been a change in the circumstances existing at the time of the original custody judgment or that facts have been revealed that were unknown at the time of that judgment, see Stephens v. Stephens, 47 Ala.App. 396, 399, 255 So.2d 338, 340-41 (Civ.App.1971), and (2) that the change in circumstances is such as to affect the welfare and best interests of the child. Ford v. Ford, 293 Ala. 743, 310 So.2d 234 (1975). The noncustodial parent does not have to prove that the change in circumstances has adversely affected the welfare of the child, but he or she may satisfy the first element of the McLen-don test by proving that the change in circumstances materially promotes the best interests of the child. Id.”
C.D.K.S. v. K.W.K., 40 So.3d 736, 740 (Ala.Civ.App.2009).
Insofar as the mother was required to prove that a material change in circumstances had occurred since the entry of the July 2008 judgment, it is well settled that the mother’s rehabilitation alone is not a proper basis for modifying custody of the child in favor of the mother. See S.L.L. v. L.S., 47 So.3d 1271, 1280 (Ala.Civ.App. 2010) (citing Ex parte McLendon, 455 So.2d at 866) (“[Although the mother’s rehabilitation and the positive path on *700 which she appears to be is commendable, such rehabilitation alone is an improper basis for regaining custody.”). The juvenile court, in its final judgment, found that a material change in circumstances had occurred since the entry of the July 2008 judgment because an irretrievable breakdown in communication had occurred between the paternal grandparents and the mother and the maternal grandparents. The juvenile court also found that the deterioration in communication between the parties was having a detrimental affect on the child. Thus, the juvenile court’s judgment modifying custody of the child did not rely solely on the mother’s self-improvement.
The paternal grandparents argue that there was no evidence to support the juvenile court’s finding that the deterioration in communication between the paternal grandparents and the mother and the maternal grandparents was having a detrimental affect on the child, and they cite S.L.L. v. L.S., swpra, to support their argument that any alleged lack of communication between the parties is not a material change in circumstance sufficient to support modification of custody. In S.L.L. v. L.S., this court reversed a judgment modifying custody of a child from the father to the mother, and we concluded that the mother’s allegations that the father failed to cooperate with the mother by communicating with her about the child was not sufficient to support a modification of custody. 47 So.3d at 1280.
The evidence in this case indicated that the mother and the paternal grandparents did not have an amicable relationship and that there was a general lack of communication between the paternal grandparents and the mother and the maternal grandparents. Unfortunately, parties involved in sharing custody of a child often have difficulty communicating with one another, and, although we agree that the child would benefit if the parties were able to communicate more effectively, we cannot conclude that the circumstances of this particular case rise to a level that warrant modification of custody. Our review of the evidence reveals that the mother was partially responsible for any lack of communication between herself and the paternal grandparents. Although there was evidence indicating that the mother had made some effort to communicate with the paternal grandparents while she had visitation with the child, the mother also testified that she tried not to speak with the paternal grandparents and that she did not telephone the paternal grandparents even to speak to the child. Other evidence indicated that the mother had stated to the paternal grandparents that she did not want to speak to them. In light of undisputed evidence indicating that the mother contributed to the breakdown in communication between herself and the paternal grandparents, we cannot affirm the juvenile court’s judgment insofar as it found a material change in circumstances sufficient to modify custody.
Accordingly, because the evidence in the record is not sufficient to support the juvenile court’s finding that a material change in circumstances had occurred since the entry of the July 2008 judgment, we must reverse the judgment of the juvenile court insofar as it modified custody of the child from the paternal grandparents and the maternal grandparents to the mother. The case is remanded to the trial court with instructions to enter an order consistent with this opinion.[2]
*701 APPEAL NO. 2090397 — REVERSED AND REMANDED WITH INSTRUCTIONS.
APPEAL NO. 2090398 — REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. In W.T.M. v. S.P., 802 So.2d 1091 (Ala.Civ.App.2001) (Crawley, J., with one judge concurring and diree judges concurring in the result), a plurality of this court concluded that a father who was not a party to a custody determination following a dependency adjudication had standing to appeal the custody award in light of the fact that the father *699 retained "residual parental rights and responsibilities” to the child. See § 12-15-102(23), Ala.Code 1975. Although the father in this case did not have custody of the child before the entry of the December 2009 custody-modification judgment, and although he did not request, nor was he awarded, custody of the child pursuant to the December 2009 judgment, we believe that the father’s residual parental rights, insofar as he was awarded visitation with the child and ordered to pay child support for the child, confer legal standing on the father so that this court may consider his appeal of the award of custody.

. Because we have concluded that the judgment of the juvenile court is due to be reversed, we pretermit discussion of the remaining issue in the paternal grandparents’ appeal regarding the juvenile court’s failure *701 to conduct a hearing on their postjudgment motion.