MOORE, Judge.
E.F.B. (“the father”) appeals from a judgment of the Houston Circuit Court (“the trial court”) modifying custody of his children. We affirm in part and reverse in part.

Procedural History

On May 14, 2012, L.S.T. (“the mother”) filed a petition in the trial court, seeking, among other things, a modification of the custody of the parties’ children. On June 18, 2012, the father answered the mother’s petition and counterclaimed for, among other things, a modification of the mother’s visitation.
On February 28, 2013, the trial court entered a judgment awarding the mother primary physical custody of the children. The trial court specifically found that the mother had met the custody-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). On March 11, 2013, the father filed a postjudgment motion. On April 5, 2013, the trial court denied the father’s postjudgment motion, but it noted that the best-interest standard, rather than the Ex parte McLendon standard, applied and that the mother had also met that standard. On April 26, 2013, the father filed his notice of appeal.

Facts

The mother testified that her marriage to the father produced three children, M.B., H.B., and A.B., who were ages 15, 12, and 10, respectively, at the time of trial. When the parties divorced, the mother received primary physical custody of all three children, but the divorce judgment was later modified in September 2010, by agreement of the parties, so as to give the parties joint physical custody of the children, although the judgment labeled the father as the primary physical custodian. For the first nine months after the modification, the mother kept the children on Sunday, Monday, and Tuesday nights; the father kept the children on Wednesday and Thursday nights; and the parties alternated custody on the weekends, in accordance with the terms of the modified judgment. Additionally, the mother testified that she would pick up the children from school on the father’s custodial days and keep them until he got off work.
The evidence in the record indicates that the relationship between M.B., the oldest child, and the father began deteriorating in the fall of 2011. The father testified that he and the mother discovered that M.B. had purchased and used nonprescribed cough syrup and pills, motivating them to send M.B. for treatment. Around that same time, the father also learned that M.B. had engaged in sexual relations at age 14. The father testified that M.B. also had lied to him about losing her cellular telephone and had misrepresented her whereabouts to him in order to spend time with her boyfriend. The father considered M.B. to be out of control. At a meeting between the father, the mother, and M.B., to discuss M.B.’s behavior, the father cursed M.B. and said he felt like shooting her. After the father said he could not look at M.B., the mother took M.B. to her home.
The mother testified that, through counseling and a change of schools, M.B. had “an amazing turnaround.” Thereafter, the mother asked the father if M.B. could stay more with her and spend only alternating weekends with the father, but the father refused. However, by December 2011, after the father discovered that M.B. had posted a message on her Facebook account soliciting marijuana use, and after M.B. had refused at the last minute to go on a *920 Christmas trip to visit paternal relatives, the father essentially relented to the mother’s and M.B.’s requests by allowing M.B. to move in with the mother. Thereafter, the father and M.B. did not contact one another for four weeks.
The father testified that the mother did not support his attempts to discipline and control M.B. The father testified that he is strict with M.B. and that every time he is strict with her, she runs to the mother, who, he said, receives M.B. willingly. The father admitted that he had told the mother that if they could not co-parent together, then she should have custody of M.B. because he would not allow M.B. to behave as she was in his house. The father testified that he had since tried to repair his relationship with M.B., but, he said, he felt that the mother’s less strict parenting style was undermining his attempts to discipline M.B. By the time of trial in February 2012, the father and M.B. had spent only limited time together following the 2011 Christmas holidays.
M.B. testified that she did not feel welcome at her father’s home and that she wanted to live full-time with the mother, where, she said, she felt more stable and did not have to babysit her siblings as much. M.B. testified that she remained upset with the father for the comments he had made during the family meeting in 2011. The mother also testified that M.B. could not forget what the father had said to her. M.B. testified that she felt that the father was still mad at her and that she had been angry that the father had asked her to testify in the previous custody trial. M.B. testified further that she wants to live with the mother. The father testified that he wants to be able to co-parent the children but that the mother cannot be a safe haven every time M.B, gets in trouble. He testified that, if it is going to be that way, then M.B. needs to stay with the mother.
The mother testified that A.B., the middle child, had telephoned the mother from the father’s house crying at times. M.B. testified that A.B. seemed sad while staying with the father and that she had witnessed A.B. crying there. A.B. testified that she had cried to the mother because the father had said he wanted to spend time with her but did not do so because he was at work. She testified that she likes spending time with both parents but that she does not get to see the father much. A.B. testified that she wants to stay with the mother a little bit more, that she sometimes gets sad when she is away from the mother when the mother texts her sentimental messages, and that she would rather be with the mother when the father is at work. The father and his wife testified that the mother upsets the children and the father’s household by constantly calling while the children are at the father’s home.
A.B. also testified that she had been left alone at the father’s house with her five-year-old stepsister at night and had been afraid. M.B. testified that the father was not spending as much time with her and her siblings as she thought he should during his custodial periods. The mother also expressed concern that the children were sometimes left alone at the father’s house while he worked. The father testified that he had rarely left A.B. alone with H.B. and his stepdaughter and that his wife works only on the days the mother has the children. The father’s wife testified that A.B. had begged to babysit, so she had let A.B. stay with the younger children on occasion. The father’s wife also testified that most of the time she and the father are with the children and that the father does not have to work at night.
*921 H.B. did not testify. The mother testified that H.B. likes spending time with the father and that she allows them to go hunting together whenever the father wants. M.B. testified that the father allows H.B. to play video games until the early morning hours, which the mother does not do, but that H.B. is all right when at the father’s home. The father’s wife testified that she and the father have rules regarding homework and bedtime and that the children are not allowed to play video games late on week nights. The father testified that H.B. and A.B. are fine -with the current custody arrangement. The father’s wife testified that the children seem happy at the father’s house.
The mother testified that, after she asked the father for full-time custody of M.B., the father had begun to more strictly enforce the custodial periods set out in the modified judgment. According to the mother, the father no longer allowed the mother to pick up the children from school on his custodial days and became less flexible about visitation during his custodial periods, although, she said, she was much more cooperative with hers. The father testified that he originally had allowed the mother to pick up the children on his custodial days but that he had stopped doing so because she would not bring the children straight to his house and, when she did bring them there, she would get the children upset by prolonging the goodbye. He testified that he had let his wife pick up the children from school at one point, but the mother had objected, so he now makes arrangements to pick up the children from school on his custodial days. The mother testified that things are different than they were when the parties had first started sharing custody because now there is a lack of cooperation regarding dividing the time each party has the children. The mother testified that she believes the younger children would benefit by having a more stable custody arrangement with her because, being unemployed, she is always home.

Discussion

On appeal the father argues that the trial court exceeded its discretion in modifying custody of the children. Before reaching that issue, we must first decide the appropriate modification standard applicable to this case.
Although we do not have the benefit of the parties’ September 2010 settlement agreement and the resulting modified divorce judgment,[1] the parties both maintain that the judgment awarded the parties joint physical custody. The evidence further indicates that the parties actually exercised physical custody of the children approximately the same amount of time after the modified judgment was entered. Our supreme court has held that joint-physical-custody arrangements may be modified based on a material change of circumstances showing that modification would serve the best interests of the children. See Ex parte Couch, 521 So.2d 987 (Ala.1988). Nevertheless, the father argues that the modified judgment designated him as the primary physical custodian and, thus, that the mother could obtain custody only by satisfying the more stringent modification standard set out in Ex
*922 parte McLendon, supra,[2]
In New v. McCullar, 955 So.2d 431, 435-36 (Ala.Civ.App.2006), this court determined that the McLendon standard did not apply to a judgment like the one before us in this case. This court stated: ,
“The central question in this case is which standard — McLendon or Couch— should be applied. If the divorce judgment awarded primary or sole physical custody to the mother, the McLendon standard applies. If the divorce judgment awarded joint physical custody, the best-interests standard of Couch applies. In this case, we conclude that the trial court incorrectly required the father to meet the McLendon standard in order to obtain a modification of the divorce judgment as it relates to custody.
“We begin our analysis with Alabama’s joint-custody statute, Ala.Code 1975, §§ 30-3-150 through -157. Section 30-3-151(3) defines ‘joint physical custody’ as
“ ‘[pjhysical custody ... shared by the parents in a way that assures the child frequent and substantial contact with each parent. Joint physical custody does not necessarily mean physical custody of equal durations of time.’
“The custody arrangement set forth in the parties’ agreement and incorporated into the divorce judgment fits within this statutory definition of ‘joint physical custody.’ The agreement provided that the parties would share ‘joint legal and joint physical custody’ of the child. The judgment provided for the child to reside with the father , almost one half of every month during the school year and approximately one half of each summer. It also provided that the child would spend approximately one half of certain designated holiday periods with the father. That arrangement clearly ‘assures the child frequent and substantial contact with each parent.’ § 30-3-151(3).
“The evidence in the record also shows that both parties in fact had frequent and substantial contact with the child; both parties lived in the same part of Baldwin County, and the father frequently took the child to, or picked him up from, school and various activities. There is also evidence in the record indicating that the child frequently stayed overnight with the father and that both parties were involved with the child’s school and extracurricular activities.
“In light of the foregoing factors, we do not consider it material that the mother had custody for a majority of the time each month. The statute does not require equal durations of time, and we have previously determined that the allocation to one parent of approximately 50 more days of physical custody per year did not constitute a custodial preference so as to warrant the application of the McLendon standard. Rehfeld v. Roth, 885 So.2d 791 (Ala.Civ.App.2004). See also Reuter v. Neese, 586 So.2d 232 (Ala.Civ.App.1991) (Couch standard applied to an arrangement under which one parent had primary custody during the school year and the other parent had primary custody during the summer).
“Similarly, under the circumstances of this case, we do not find that the express *923 declaration that the parties were awarded joint physical custody was contradicted by the statement in the divorce judgment that ‘the child’s primary residence shall be with [the móther]’ or by the references to the father’s ‘visitation.’ To the extent that the divorce judgment is internally inconsistent, we conclude that it in fact created a joint-physical-eustody arrangement, as defined by § 30-8-151(3).”
(Footnotes omitted.)
Like in New, we conclude that the custody arrangement under the modified judgment in the present case, in which the parties received “joint physical custody” and both parties exercised custody over the children for an approximately equal amount of time, amounts to “a joint-physical-custody arrangement, as defined by § 30-3-151(3).” New, 955 So.2d at 436. We further conclude that, like in New, the fact that the modified judgment designated the father as the primary physical custodian does not alter the true nature of the custody arrangement. Therefore, following New, the McLendon standard does not apply to this case.
“Where, as in the present ease, there is a prior judgment awarding joint physical custody, ‘ “the best interests of the child” ’ standard applies in any subsequent custody-modification proceeding. Ex parte Johnson, 673 So.2d 410, 413 (Ala.1994) (quoting Ex parte Couch, 521 So.2d 987, 989 (Ala.1988)). To justify a modification of a preexisting judgment awarding custody, the petitioner must demonstrate that there has been a material change of circumstances since that judgment was entered and that ‘ “it [is] in the [child’s] best interests that the [judgment] be modified” ’ in the manner requested. Nave v. Nave, 942 So.2d 372, 376 (Ala.Civ.App.2005) (quoting Means v. Means, 512 So.2d 1386, 1388 (Ala.Civ.App.1987)).”
Ex parte Blackstock, 47 So.3d 801, 804-05 (Ala.2009).
Although the father directs much of his argument on appeal to the mother’s alleged failure to meet the McLendon standard, which we have found to be inapplicable to this case, the father also argues that no material change of circumstances had occurred to justify the modification. Some Alabama cases state generally that a judgment deciding the custody of a child never has res judicata effect. See, e.g., Turquitt v. Turquitt, 506 So.2d 1014, 1017 (Ala.Civ.App.1987). More accurately, a child-custody judgment has res judicata effect as to the facts that were before the court at the time of the entry of that judgment. Atkinson v. Atkinson, 45 Ala.App. 428, 430, 231 So.2d 753, 755 (1970). Once a court has adjudicated the custody of a child, that judgment is final and conclusive on the parties and the interests of the child so long as the facts existing at the time of the entry of the judgment remain without material change. See Decker v. Decker, 176 Ala. 299, 58 So. 195 (1912). In order to avoid protracted and repeated litigation over the custody of a child, Alabama law requires a party to prove a material change in circumstances since the entry of the last judgment in order to obtain a modification of the custody of the child. See Sparkman v. Sparkman, 217 Ala. 41, 114 So. 580 (1927).
“In order to prove a material change of circumstances, the noncustodial parent must present sufficient evidence indicating (1) that there has been a change in the circumstances existing at the time of the original custody judgment or that facts have been revealed that were unknown at the time of that judgment, see Stephens v. Stephens, 47 Ala.App. 396, 399, 255 So.2d 338, 340-41 (Civ.App.1971), and (2) that the change in circumstances is such as to affect the welfare and best interests of the child. Ford v. Ford, 293 Ala. 743, 310 So.2d 234 (1975). *924 The noncustodial parent does not have to prove that the change in circüm-stances has adversely affected the welfare of the child, ’ but he or she may satisfy the first element ... by proving that the change in circumstances materially promotes the best interests of the child.”
C.D.K.S. v. K.W.K., 40 So.3d 736, 740 (Ala.Civ.App.2009). “A material change of circumstances occurs when important facts unknown at the time of the initial custody judgment arise that impact the welfare of the child.” K.E.W. v. T.W.E., 990 So.2d 375, 380 (Ala.Civ.App.2007).
The record shows that, since the parties agreed to modify the divorce judgment in 2010, the relationship between M.B. and the father has seriously deteriorated to the point that the father stated in anger that he felt like shooting M.B. and, even months later at trial, testified that he could no longer co-parent M.B. with the mother under the joint-custody arrangement. In Pullum v. Webb, 669 So.2d 925, 927 (Ala.Civ.App.1995), this court described an erosion of the parent-child relationship as a material change of circumstances.[3] Thus, we find no merit in the father’s argument that the record contains insufficient evidence of a material change of circumstances in regard to M.B. Accordingly, we cannot say that the trial court erred in changing the custody of M.B.
We do believe, however, that the trial court did not have sufficient evidence of a material change of circumstances to warrant modifying custody of the two younger children. At trial, the mother primarily complained that, since the parties agreed to the joint-custody arrangement in September 2010, the father has become less flexible with sharing custody of all the children and that he now refuses to let her pick up the children after school on his custodial days. However, the father has no legal obligation to share his custodial time, and his insistence on following the terms of the modified judgment does not constitute a ground for modification. See Cochran v. Cochran, 5 So.3d 1220, 1228 (Ala.2008) (plurality opinion). “[A]n alleged lack of cooperation ... is generally an insufficient basis on which to modify custody.” S.L.L. v. L.S., 47 So.3d 1271, 1279 (Ala.Civ.App.2010).
The mother did present some evidence indicating that A.B. preferred to be in the sole custody of the mother because she missed the mother and wanted to spend more time with the father than his schedule permitted. In C.E. v. C.C.H., 963 So.2d 131 (Ala.Civ.App.2007), this court concluded that a mother who had presented evidence almost identical to the evidence presented in this case regarding the younger children had failed to prove a material change of circumstances to justify a change in custody. In this case, the mother did not present any evidence to show that, since the parties agreed to the joint-custody arrangement, any material change in the father’s work schedule had occurred or that A.B.’s relationship with the father or the mother had changed in any significant respect. We presume that the parties, as concerned parents, considered the impact on A.B. of their decision to adopt a joint-custody arrangement in September 2010 when determining that such an arrangement served her best interests. The evidence does not disclose that the circumstances upon which the parties based their decision had changed in any *925 material respect or that A.B. had experienced some unanticipated emotional reaction to the joint-custody arrangement.
As for H.B., the record contains no evidence as to any material change in the circumstances since entry of the last custody judgment that have affected his best interests. The parties agree that H.B. has adjusted well to the joint-custody arrangement, and the mother has failed to offer any reason why that arrangement should not be continued for his benefit.
In ruling on the father’s post-judgment motion, the trial court indicated that it had decided to change custody of the two younger children in order to keep the siblings together in the same custody arrangement so as to avoid a chaotic arrangement whereby the children would be living in separate households according to separate rules. Although Alabama law generally encourages trial courts not to separate siblings, see A.B. v. J.B., 40 So.3d 723 (Ala.Civ.App.2009), the law more specifically requires a trial court to assess the best interests of each child individually when determining the custody arrangement that best suits the interests of each child. See id. In this case, an individualized assessment shows that no material change of circumstances has occurred with regard to A.B. and H.B. that would warrant a change in their custody arrangement. The fact that they will now live differently than their older sibling does not, in and of itself, warrant upheaval of their beneficial custody situation. Additionally, by legislative decision, joint custody is the preferred method of raising children of divorced parents in this state. See Ala.Code 1975, § 30-3-150. In the absence of concrete evidence indicating that the joint-custody arrangement is actually causing some real adverse impact on the two younger children, any speculative concern that the arrangement would be too disorderly does not constitute a ground for modification of the joint-custody arrangement. See Watters v. Watters, 918 So.2d 913 (Ala.Civ.App.2005).

Conclusion

Based on the foregoing, we reverse the judgment to the extent that it modified custody of A.B. and H.B. We affirm the judgment to the extent that it modified custody of M.B. We remand the cause for the entry of a judgment consistent with this opinion.
AFFIRMED IÑ PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. The father attached the settlement agreement and the judgment, as well as another exhibit, to his brief to this court. Although the trial court could have taken judicial notice of those documents, this court cannot consider them because they are not included in the record on appeal, and this court cannot take judicial notice of another court’s proceedings. Therefore, we grant the mother’s motion to strike those attachments. See Cleveland v. Central Bank of the South, 574 So.2d 741, 743 (Ala.1990).

. In Ex parte McLendon, supra, our supreme court held, among other things, that, when a prior judgment awards one party sole physical custody of a child, the custody provision of that judgment can be modified only by a showing that material changes since the entry of the last judgment demonstrate that a change in custody will materially promote the welfare of the child and that the positive good brought about by the proposed modification would more than offset the inherently disruptive effect caused by uprooting the child. 455 So.2d at 865-66.

. In Pullum, this court further held that the development of a strained relationship between the mother in that case and her children would not alone justify modification of custody under the McLendon standard. See also Cochran v. Cochran, 5 So.3d 1220, 1230 (Ala.2008) (plurality opinion) (accord). Nothing in our discussion of the current case detracts from that holding.