William Randle New ("the father") appeals from a judgment of the Baldwin Circuit Court denying his petition for a modification of the custody of his son and modifying the father's midweek visitation.
The father and Wendy Gayl McCullar ("the mother") were divorced in 2000. The parties have one child from the marriage, a son who was nine years old at the time of the trial in the present action. The divorce judgment, which incorporated an agreement of the parties, provided that
 "the parties shall share joint legal and joint physical custody of the minor child, and the child's primary residence shall be with the Defendant-Mother, subject to all rights of visitation on the part of the Plaintiff-Father. . . ."
The father was awarded extensive "visitation," including (1) alternate weekends from 6:00 p.m. on Thursday until the following Monday at the beginning of school or 8:30 a.m., whichever comes first, (2) two consecutive nights of overnight visitation on alternate weeks, from 6:00 p.m. on Tuesday until Thursday morning at the beginning of school, or 8:30 a.m., (3) six weeks of summer visitation, and (4) designated holidays that alternated annually between the parents. According to the father, he had physical custody of the child at least one half of the time; according to the mother, the father had custody of the child 35 to 40 percent of the time.
The agreement further provided:
 "2. The parties agree that neither parent will take the minor child over 100 miles outside of the area in which the parties live without notifying the other party of the same and providing an itinerary for the child. The area in which the child lives shall be defined as Mobile County, Alabama, Baldwin County, Alabama, and Escambia County, Florida.
 "3. The parties agree that if the custodial parent elects to relocate else-where *Page 433 
within the three-county area described in the next preceding paragraph, then the parties shall meet at a midpoint for purposes of pick-up and delivery for child visitation.
 "4. The parties agree that if either party relocates their primary residence outside of the three-county area described above, then that party shall bear all costs of transportation for visitation. Neither party shall relocate their primary residence outside the three-county area described above without first providing the other party with a sixty (60) day written notice of the same."
The mother had been a stay-at-home mother since the birth of the parties' child, and that status continued after the divorce. The father was employed as the general manager of an automobile dealership in Mobile. After the divorce, both parties continued to live in the same area of Baldwin County, and both parents actively participated in the child's school activities and his extracurricular activities.
In 2001, the mother married Chris McCullar. In 2002, the mother and McCullar had a son; the parties' child has a good relationship with his younger half brother. McCullar is a tennis professional who had worked for approximately eight years at the Rock Creek Country Club. In 2003, the Rock Creek Country Club was sold to a new owner, and McCullar's income decreased substantially. In the spring of 2004, McCullar accepted a job as a tennis professional in Birmingham that paid a salary comparable to his previous salary at the Rock Creek County Club.
On May 13, 2004, the father filed a petition to modify, alleging that the mother intended to relocate to Birmingham, that the relocation would not be in the child's best interests, and that a temporary restraining order should be issued pursuant to the Alabama Parent-Child Relationship Protection Act, Ala. Code 1975, § 30-3-160 et seq. The petition to modify sought (1) a temporary restraining order prohibiting the mother from relocating the child to Birmingham, (2) a modification of the divorce judgment establishing the primary residence of the child with the father, and (3) a termination of the father's child-support obligation.
On June 15, 2004, the trial court entered an ex parte temporary order restraining the mother from changing the child's residence from Baldwin County. The mother filed an answer and a counterclaim seeking, among other things, permission to move the child to Birmingham and an in-crease in child support.
On August 9, 2004, the trial court held a hearing on temporary matters, apparently without taking testimony. On October 6, 2004, the trial court entered a temporary order that the child remain in Baldwin County pending a final hearing in this matter. The order provided that, if the mother should relocate from Baldwin County, the custody of the child would be vested with the father pending the final hearing.
The mother moved to Birmingham a few weeks after the August 9, 2004, hearing. After the mother moved to Birmingham, the child resided with the father in Baldwin County, and he was living with the father at the time of the trial in May 2005. While he lived with the father, the child continued to attend Bayside Academy, a private school that he had attended since preschool, and he continued to do well in school.
In early 2005, McCullar took a job in Pensacola, Florida, which is in the three-county area designated in the divorce judgment. McCullar and the mother testified that the move to Pensacola was made primarily to assist the mother in retaining *Page 434 
primary custody of the child. The mother's parents and several members of her extended family live in Pensacola and are available to help her care for the child.[1]
In May 2005, the trial court held an ore tenus hearing. In June 2005, the trial court entered a judgment in which, among other things, it determined that the standard of Ex parteMcLendon, 455 So.2d 863 (Ala. 1984), applied and that the father had presented insufficient evidence to meet his burden of proof under the McLendon standard with respect to a change of custody. The judgment (1) denied the father's petition for a modification of custody, (2) continued the original shared-custody arrangement for the summer of 2005, and (3) modified the father's custodial time with the child during the school year by requiring the father to exercise his midweek custodial rights in Escambia County, Florida. The trial court made this modification because it determined that it would not be in the child's best interests to require him to wake up early and travel back to Pensacola for school on Thursdays. The father did not file a postjudgment motion.
The father appeals, contending (1) that the trial court erred in applying the McLendon standard, instead of the best-interests standard of Ex parte Couch,521 So.2d 987 (Ala. 1988), (2) that it would be in the child's best interests to live with the father and to continue attending Bayside Academy, and (3) that the trial court erred in modifying the father's visitation schedule when that issue had not been raised by the pleadings of either party. The mother argues that the provision in the divorce judgment that she was to provide the child's primary residence constitutes a custodial preference and that application of the McLendon standard was therefore correct.
The touchstone for custody decisions is the "welfare and best interests of the child." Willing v. Willing,655 So.2d 1064, 1065 (Ala.Civ.App. 1995). Because the trial court heard ore tenus evidence, its judgment is afforded a presumption of correctness. Ex parte Fann, 810 So.2d 631, 633
(Ala. 2001). The ore tenus rule does not, however, apply to the trial court's determination of which legal standard to apply. That is a question of law that is afforded no presumption of correctness. Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994); and Daniel v. Daniel, 842 So.2d 20, 21
(Ala.Civ.App. 2002).
 "There are different standards for a trial court to use in ruling on questions of child custody. If one parent has previously been granted primary custody or if one parent has `given up' legal custody, then an existing custody arrangement will be modified only if the modification materially promotes the best interests and welfare of the children. Ex parte McLendon, 455 So.2d 863, 865-66 (Ala. 1984). If neither parent has previously been given primary physical custody, then `the best interests of the child' standard applies. Ex parte Couch, 521 So.2d 987, 989 (Ala. 1988)."
Ex parte Johnson, 673 So.2d 410, 413 (Ala. 1994).
The McLendon standard
 "`is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's *Page 435 
satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.'"
McLendon, 455 So.2d at 865-66 (quoting Wood v.Wood, 333 So.2d 826, 828 (Ala.Civ.App. 1976)).
The central question in this case is which standard —McLendon or Couch — should be applied.[2] If the divorce judgment awarded primary or sole physical custody to the mother, the McLendon standard applies. If the divorce judgment awarded joint physical custody, the best-interests standard of Couch applies. In this case, we conclude that the trial court incorrectly required the father to meet the McLendon standard in order to obtain a modification of the divorce judgment as it relates to custody.
We begin our analysis with Alabama's joint-custody statute, Ala. Code 1975, §§ 3-30-150 through-157. Section30-3-151(3) defines "joint physical custody" as
 "[p]hysical custody . . . shared by the parents in a way that assures the child frequent and substantial contact with each parent. Joint physical custody does not necessarily mean physical custody of equal durations of time."
The custody arrangement set forth in the parties' agreement and incorporated into the divorce judgment fits within this statutory definition of "joint physical custody." The agreement provided that the parties would share "joint legal and joint physical custody" of the child. The judgment provided for the child to reside with the father almost one half of every month during the school year and approximately one half of each summer. It also provided that the child would spend approximately one half of certain designated holiday periods with the father. That arrangement clearly "assures the child frequent and substantial contact with each parent." §30-3-151(3).
The evidence in the record also shows that both parties in fact had frequent and substantial contact with the child; both parties lived in the same part of Baldwin County, and the father frequently took the child to, or picked him up from, school and various activities. There is also evidence in the record indicating that the child frequently stayed overnight with the father and that both parties were involved with the child's school and extracurricular activities.
In light of the foregoing factors, we do not consider it material that the mother had custody for a majority of the time each month. The statute does not require equal durations of time, and we have previously determined that the allocation to one parent of approximately 50 more days of physical custody per year did not constitute a custodial preference so as to warrant the application of the McLendon standard. Rehfeldv. Roth, 885 So.2d 791 (Ala.Civ.App. 2004). See alsoRenter v. Neese, 586 So.2d 232 (Ala.Civ.App. 1991) (Couch standard applied to an arrangement under which one parent had primary custody during the school year and the other parent had primary custody during the summer).
Similarly, under the circumstances of this case, we do not find that the express declaration that the parties were awarded *Page 436 
joint physical custody was contradicted by the statement in the divorce judgment that "the child's primary residence, shall be with [the mother]" or by the references to the father's "visitation."[3] To the extent that the divorce judgment is internally inconsistent, we conclude that it in fact created a joint-physical-custody arrangement, as defined by §30-3-151(3).
Finally, we note that the policy behind the McLendon
standard — to minimize the disruption in the young child's life — is neutralized in this case. There will be a substantial disruption in the child's life regardless of the trial court's decision. If the father's petition is granted, the child will be uprooted from his mother, stepfather, and half brother; if the father's petition is denied, the child's time spent with his father will diminish considerably, and the child will be uprooted from his community, his friends, and the school that he has always attended. See Couch,521 So.2d at 990 (because of the mother's proposed move, the children would be uprooted even if the custody did not change); and Diloriov. Long, 839 So.2d 650 (Ala.Civ.App. 2002) (affirming a change of custody based on the former custodial parent's move out of the state).
We conclude that the trial court erred by applying theMcLendon standard. We therefore reverse the judgment and remand the cause for the trial court to apply the proper standard. See Rehfeld, 885 So.2d at 794 (when trial court erroneously applies the more stringent standard and denies a modification, the proper approach is to reverse the judgment and remand the cause for the trial court to apply the proper standard); and Davis v. Davis, 753 So.2d 513
(Ala.Civ.App. 1999).
In light of our disposition of this case, we pretermit consideration of the father's other arguments.
The mother's request for the award of an attorney fee on appeal is denied.
[1] There is evidence indicating that the child's maternal grandparents helped the father care for the child while the father had temporary custody.
[2] The trial court determined that the McLendon
standard applied and that the father had not met the burden imposed by that standard. The father does not argue on appeal that he met the burden of the McLendon standard.
[3] Citing Ex parte Johnson, 673 So.2d 410, 413
(Ala. 1994); Berrey v. Berrey, 622 So.2d 1316
(Ala.Civ.App. 1993); and Jenkins v. Jenkins,541 So.2d 19, 19 (Ala.Civ.App. 1989), the mother argues that the designation of the child's "primary residence" constitutes a custodial preference that requires the application of theMcLendon standard. The cited cases are not dispositive in this case. First, those cases are distinguishable because they each involve a parent with primary physical custody.See Johnson, 673 So.2d at 413 (the parties had been awarded joint custody, but the mother was designated as having "primary custody"); Berrey, 622 So.2d at 1317 (the mother would provide the child's "primary residence," and the father had visitation for only four days per month); andJenkins, 541 So.2d at 19 (mother would provide the children's primary residence and the father would have reasonable visitation rights). Further, those cases were decided before the effective date of § 30-3-151 (3), i.e., January 1, 1997.
REVERSED AND REMANDED.
BRYAN, J., concurs.
PITTMAN, J., concurs in the result, with writing, which CRAWLEY, P.J., and THOMPSON, J., join.