THOMAS, Judge.
 

 Brandy Lynn Motley (“the wife”), a pro se appellant, appeals from the a judgment of Montgomery Circuit Court (“the trial court”) divorcing the her from Gregory Alan Motley (“the husband”). We affirm the judgment in part and reverse it in part.
 

 Facts and Procedural History
 

 The parties were married on August 25, 2001. The parties have one minor child — a son who was born on February 15, 2002 (“the child”). The parties separated in October 2008, and the husband filed a complaint for a divorce and a request for pen-dente lite relief on February 28, 2009. Following a pendente lite hearing before a special master, the special master filed a “report of reference” with the trial court. The special master’s report of reference awarded the parties joint custody of the child. The child was to “reside primarily” with the wife, and the husband was awarded “visitation.” The wife was to maintain health insurance for the child, and the husband was to pay the wife $250 per month in child support. The trial court “approved and affirmed” the report of reference, and neither party filed an objection.
 

 The trial court conducted a trial on December 1, 2009, at which it received ore tenus testimony. The evidence was as follows:
 

 At the time the parties married, the husband was not employed, but he received a monthly $1,000 cash gift from his father. The wife was enrolled in nursing school at Troy State University in Montgomery; she graduated in 2005.
 

 The wife had an affair with another man in 2006. Rather than seeking a divorce at that time, the parties agreed to work things out and purchased a house together in 2007. The parties lived in the house together until October 2008, when the husband moved out. The husband testified that the parties had marital problems from the time the wife had the affair until the time they separated. The husband testified that the reason he left the wife was because the wife had abused prescription pills, specifically Adderall. The wife testified that she had had an Adderall prescription and that she had been taking the recommended dosage. The husband testified that, before the parties separated, the wife “was staying up until the wee hours of the morning and she’d sleep during the
 
 *212
 
 day and [the child] was getting to school late.” The husband testified that “he got tired” of the wife’s failure to get the child to school on time and moved out. The husband agreed that his “solution to this problem was to abandon [the] child and move out of the house.” After the parties separated, they sold the marital residence and divided their personal property.
 

 The husband also testified that the wife had “filed a protection from abuse order” against him based on his alleged physical abuse of the wife. The husband denied ever having physically abused the wife. The wife introduced evidence in the form of pictures of bruises on her body that the husband had allegedly inflicted on her on October 16, 2008; the wife testified that the husband had been “on something” when the alleged abuse took place. The wife testified that she had not called the police to report the incident. Further, the wife testified that she did not believe that the husband was a danger to the child and that she was not opposed to the husband’s having visitation with the child.
 

 The husband also testified that, after the parties had separated, he broke out the windows in the wife’s car, a 2006 Honda Accord that the parties had jointly leased during the course of their marriage. The wife indicated that the husband had also “rammed into [the wife’s] car” with his car; the wife filed a police report regarding that incident. The wife paid to repair her car.
 

 The husband testified that, at the time of the trial, he had not been employed for “a couple of years now” but that he was still receiving the $1,000 per month cash gift from his father. The wife testified that the husband worked for his father’s business and that she believed he received approximately $3,000 per month in income; the husband denied that he had been paid for work that he had performed for his father’s business. After the parties separated, the husband apparently lived intermittently at three different properties that his parents owned: his parents’ residence, a house situated next to a pond, and a house “down in the country.” The husband indicated that his parents’ residence had four bedrooms and four bathrooms. The husband testified that the child would have his own bedroom if the husband were living in his parents’ residence. The parties agreed that it was in the child’s best interest to have his own bedroom. At the time of the trial, the husband was living with another woman in the house his parents owned situated next to a pond.
 

 The wife testified that she had lived with another man, who is simply referred to in the record as “Chris,” from January 2009 until September 2009. At the time of the trial, the wife had moved into an apartment with a female friend. The husband testified that the child would not have his own bedroom at the wife’s apartment. In fact, the child had to sleep on the wife’s couch when staying with the wife. The wife’s residence with Chris had been in the Dalraida school district, and the child was enrolled at Dalraida Elementary School. The wife and the child currently reside in the Blount school district; however, both of the parties agreed that it would be in the child’s best interest for him to finish the school year at Dalraida Elementary School.
 

 At the time the parties separated, the wife was working at a “cancer care center”; she was subsequently laid off. At the time of the pendente lite hearing, the wife had been working at Jackson Hospital as a “floor nurse.” Pursuant to the pen-dente lite order, the wife had obtained health insurance for the child through her job with Jackson Hospital. However, the wife was subsequently laid off from her employment with Jackson Hospital. The
 
 *213
 
 •wife then obtained employment with a doctor’s office, but obtaining health insurance for the child through her employment with the doctor’s office would have cost approximately $800 per month. As a result, the wife asked the husband to obtain health insurance for the child, which he did. At the time of the trial, the husband was paying approximately $862 per month in health-insurance expenses for the child; the wife testified that the deductible was $1,000. The wife testified that she had incurred approximately $400 in health-care expenses for the child in 2009. By the time of the trial, the -wife had been laid off from her employment with the doctor’s office.
 

 At the time of the trial, the wife had found a new job but had not started working yet. The wife testified that she anticipated being paid $125 for every patient she saw and expected to see six to seven patients per week; such estimations would put the wife’s estimated income anywhere from $8,000 to $3,500 per month.
 
 [1]
 
 The wife testified that she had been paying $200 per month in day-care expenses.
 

 The parties were indebted to numerous creditors at the time of the trial. The types of debt included the wife’s student-loan debt as well as numerous credit accounts; the total indebtedness of the parties amounted to $50,343.98. The wife’s exhibit four, which was admitted at trial, indicates that the wife had incurred $6,125 in student-loan debt before the parties were wed and $21,500 after the parties were wed. The husband testified, and the wife agreed, that he was employed during the period that the wife had incurred the student-loan debt; the wife testified that, during that period, the husband had earned $800 every two weeks. The wife testified that the parties had used the money from the student loans “on food, on groceries, on taking care of [the] child, on paying bills”; the husband disputed that the student-loan money had been used on anything but the wife’s education. When the wife began working for Baptist Hospital after she completed her nursing degree, Baptist Hospital paid $7,000 toward her student-loan debt. The wife introduced evidence at trial indicating that the remaining balance on her student-loan debt was $27,456.35.
 

 The parties also owed $22,887.63 to other creditors at the time of the trial. The wife testified that most of the accounts were in her name but that they had been used for the benefit of the parties and the child, i.e., for purchasing groceries, clothes, and gas for their vehicles. The parties agreed that they owed approximately $3,200 on furniture purchased from Rooms-to-Go, a furniture store. The parties also agreed that the wife had possession of the furniture. The wife testified that the husband had incurred $1,824.70 in debt at a Best Buy electronics store and that the items purchased from Best Buy, except for a camera, had been solely for
 
 *214
 
 the husband’s use and enjoyment. The wife also testified that the debt in the amount of $2,074 owed to American General was solely the husband’s obligation. The wife testified that the husband’s mother had “paid any debts that were in [the husband’s] name off.” The wife’s exhibit delineating the parties’ credit-card debts indicates that the parties had a balance of $7,565.30 on a Discover credit card. The wife testified that she had charged $3,000 on the Discover card as soon as she got it in 2003 but that that charge had been paid off.
 

 At the time of the trial, the parties owed $11,635.85 on the car lease. The wife had continued to drive the car after the parties had separated. According to the husband, the wife was to make the payments on the car lease and was to maintain insurance on the car. The wife agreed that she was to make the car payments, but she testified that the husband had agreed to make the insurance payments. After the parties separated, the wife wrecked and totaled the car in May or April of 2009. At that time, the wife discovered that the car insurance had not been paid since January or February of 2009 and, as a result, had been canceled.
 

 Based on the ore tenus evidence, the trial court entered a judgment on January 20, 2010. The trial court’s judgment purported to award the parties joint custody of the child. The trial court ordered that the child was to reside with the wife and set forth specific visitation rights for the husband, ordering that the husband have physical custody of the child “every other weekend commencing on Friday at 3:00 p.m. and continuing until the following Sunday at 5:00 p.m.,” “for thirty (30) consecutive days during the summer,” and for other specified holidays. The trial court’s judgment also ordered as follows:
 

 “6. MEDICAL/DENTAL EXPENSES: The Husband shall continue to maintain health insurance for the benefit of the minor child as he is presently doing. The Parties shall equally be responsible for and shall each pay one-half of all medical/dental expenses not covered by insurance including, but not limited to, all deductibles, co-payments, medical, dental, optical, orthodontic, counseling and prescription drug expenses incurred on behalf of the minor child.
 

 “7. CHILD SUPPORT:
 

 “a. Child support has been computed in accordance with the Child Support Guidelines, Rule 32, Alabama Rules of Judicial Administration, based on the income of the Parties as stated in their respective CS-41’s filed herein and their testimony at the Hearing. According to the computation, beginning on December 1, 2009 the Wife shall pay to the Husband child support in the sum of One Hundred Forty-Four and 45/100 ($144.45) Dollars per month for the support and maintenance of the minor child of the Parties. Said payments shall be paid by wage withholding and an order shall issue immediately to the employer. Such child support shall continue until the minor child becomes nineteen (19) years of age, graduates from high school, marries, or becomes otherwise self supporting, whichever shall first occur.[
 
 2
 
 ]
 

 
 *215
 
 “b. As stated above, the Wife was ordered to provide health insurance for the minor child beginning April 1, 2009 and has failed to do so. The Husband has provided such insurance at a cost of $310.11 for April through July 2009 (4 x $310.11 = $1,240.44) and at the current rate of $362.00 per month from August through November 2009 (4 x $362 = $1,448) for a total of $2,688.44. A judgment is hereby given to the Husband in the amount of $2,688.44.
 

 [[Image here]]
 

 “9. That as stated previously, the Wife shall be responsible for the ‘Rooms to Go’ debt.
 

 “10. That as stated previously, the Husband shall be responsible for the ‘Best Buy’ debt.
 

 “11. That as stated previously, the Wife shall be responsible for her ‘student loans.’
 

 “12. That as stated previously, the Wife shall be responsible for the [car] debt.
 

 “13. That the Parties shall be equally responsible for paying all other marital debt not specifically named herein.”
 

 As mentioned in footnote 2, the husband filed a postjudgment motion on February 4, 2010, requesting that the trial court correct its final judgment insofar as it required the husband rather than the wife to pay child support. The husband also requested in his postjudgment motion that the trial court modify its judgment in order to make the wife solely responsible for the parties’ debt owed to Rooms-to-Go. The wife also filed a postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., on February 8, 2010. In her postjudgment motion, among other things, the wife challenged the trial court’s computation of child support. On May 4, 2010, the trial court granted the husband’s motion and denied the wife’s motion, as follows:
 

 “1. The said Final Decree of Divorce is revised to state that the Wife shall pay to the Husband the child support as stated therein.
 

 “2. The ‘Credit card debts’ shown on the Wife’s Ex. 4 shall be divided as follows: The Husband shall be responsible for the Best Buy and American General (which has been paid in full) [debts]; the Wife shall be responsible for the Discover and Rooms to Go debts; and, all other debts shown in the Credit card debts list shall be the equal responsibility of both parties.”
 

 The wife appealed.
 
 [3]
 

 Standard of Review
 

 This court’s well established standard of review in divorce proceedings is that a divorce judgment based on ore tenus evidence is presumed correct, and such a judgment will be reversed only when it is unsupported by the evidence so as to be plainly and palpably wrong.
 
 See Harmon v. Harmon,
 
 928 So.2d 295 (Ala.Civ.App.2005) (citing
 
 Baggett v. Baggett,
 
 855 So.2d 556, 559-60 (Ala.Civ.App.2003)).
 

 
 *216
 

 Discussion
 

 The wife argues that, “[a]s the custodial parent, she should not be responsible to pay child support to [the husband], who is the non-custodial parent and who only has custody of [the child] every other weekend and on Wednesdays with the exception of certain holidays and for 30 days during summer vacation.” Although the wife does not fully support her argument with legal authority, she does direct this court’s attention to our statutes governing child custody, § 30-3-150 et seq., Ala.Code 1975, and it is clear that this pro se appellant is challenging the trial court’s judgment insofar as it purports to hold that the parties have joint physical custody, as that term is defined in § 30-3-151, Ala.Code 1975. The wife appears to argue that she has been awarded sole physical custody, as that term is defined in § 30-3-151. We agree.
 

 Section 30-3-151 defines the various forms of custody a trial court can award as follows:
 

 “(1) Joint custody. Joint legal custody and joint physical custody.
 

 “(2) Joint legal custody. Both parents have equal rights and responsibilities for major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training. The court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.
 

 “(3) Joint physical custody. Physical custody is shared by the parents in a way that assures the child frequent and substantial contact with each parent. Joint physical custody does not necessarily mean physical custody of equal durations of time.
 

 “(4) Sole legal custody. One parent has sole rights and responsibilities to make major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training.
 

 “(5) Sole physical custody. One parent has sole physical custody and the other parent has rights of visitation except as otherwise provided by the court.”
 

 In
 
 New v. McCullar,
 
 955 So.2d 431 (Ala. Civ.App.2006), this court reviewed a trial court’s judgment refusing to modify a custody order. In
 
 New,
 
 the father had filed a motion to modify the trial court’s judgment establishing custody of the parties’ minor son. In reviewing the father’s modification petition, the trial court applied the
 
 Ex parte McLendon,
 
 455 So.2d 863 (Ala.1984), custody-modification standard, apparently concluding that it had previously awarded the mother sole physical custody of the parties’ child. The trial court’s judgment, which the father sought to have modified, ordered that
 

 “ ‘the parties shall share joint legal and joint physical custody of the minor child, and the child’s primary residence shall be with the Defendant-Mother, subject to all rights of visitation on the part of the Plaintiff-Father .... ’
 

 “The father was awarded extensive ‘visitation,’ including (1) alternate weekends from 6:00 p.m. on Thursday until the following Monday at the beginning of school or 8:30 a.m., whichever comes first, (2) two consecutive nights of overnight visitation on alternate weeks, from 6:00 p.m. on Tuesday until Thursday morning at the beginning of school, or 8:30 a.m., (3) six weeks of summer visitation, and (4) designated holidays that alternated annually between the parents. According to the father, he had physical custody of the child at least one half of the time; according to the moth
 
 *217
 
 er, the father had custody of the child 35 to 40 percent of the time.”
 

 New,
 
 955 So.2d at 432. In reviewing the trial court’s decision denying the father’s custody-modification petition, this court stated:
 

 “The central question in this case is which
 
 standard
 
 — [Ex
 
 parte
 
 ]
 
 McLendon
 
 [455 So.2d 863 (Ala.1984),] or
 
 [Ex parte
 
 ]
 
 Couch[,
 
 521 So.2d 987 (Ala.1988)]— should be applied. If the divorce judgment awarded primary or sole physical custody to the mother, the
 
 McLendon
 
 standard applies. If the divorce judgment awarded joint physical custody, the best-interests standard of
 
 Couch
 
 applies. In this case, we conclude that the trial court incorrectly required the father to meet the
 
 McLendon
 
 standard in order to obtain a modification of the divorce judgment as it relates to custody.
 

 “We begin our analysis with Alabama’s joint-custody statute, Ala.Code 1975, §§ 30-3-150 through -157. Section 30-3-151(3) defines ‘joint physical custody’ as
 

 “ ‘[p]hysieal custody ... shared by the parents in a way that assures the child frequent and substantial contact with each parent. Joint physical custody does not necessarily mean physical custody of equal durations of time.’
 

 “The custody arrangement set forth in the parties’ agreement and incorporated into the divorce judgment fits within this statutory definition of ‘joint physical custody.’ The agreement provided that the parties would share ‘joint legal and joint physical custody’ of the child. The judgment provided for the child to reside with the father almost one half of every month during the school year and approximately one half of each summer. It also provided that the child would spend approximately one half of certain designated holiday periods with the father. That arrangement clearly ‘assures the child frequent and substantial contact with each parent.’ § 30-3-151(3).
 

 “The evidence in the record also shows that both parties in fact had frequent and substantial contact with the child; both parties lived in the same part of Baldwin County, and the father frequently took the child to, or picked him up from, school and various activities. There is also evidence in the record indicating that the child frequently stayed overnight with the father and that both parties were involved with the child’s school and extracurricular activities.
 

 “In light of the foregoing factors, we do not consider it material that the mother had custody for a majority of the time each month. The statute does not require equal durations of time, and we have previously determined that the allocation to one parent of approximately 50 more days of physical custody per year did not constitute a custodial preference so as to warrant the application of the
 
 McLendon
 
 standard.
 
 Rehfeld v. Roth,
 
 885 So.2d 791 (Ala.Civ.App.2004).
 
 See also Reuter v. Neese,
 
 586 So.2d 232 (Ala.Civ.App.1991)
 
 (Couch
 
 standard applied to an arrangement under which one parent had primary custody during the school year and the other parent had primary custody during the summer).
 

 “Similarly, under the circumstances of this case, we do not find that the express declaration that the parties were awarded joint physical custody was contradicted by the statement in the divorce judgment that ‘the child’s primary residence shall be with [the mother]’ or by the references to the father’s ‘visitation.’ To the extent that the divorce judgment is internally inconsistent, we conclude that it in fact created a joint-physical-custody
 
 *218
 
 arrangement, as defined by § 30-3-151(3).”
 

 955 So.2d at 435-36 (footnotes omitted).
 

 The present case is distinguishable from
 
 New
 
 because, in this case, the child is to “reside with the Wife” and the husband is to see the child only a total of four days and five nights per month, in addition to scheduled visitation during certain holidays. The husband is also to have the child for “thirty (30) consecutive days during the summer.” Under the trial court’s custody order, the wife will have the child for approximately 280 days of the year, more than three quarters of the year, and the husband will have the child for approximately 85 days of the year, less than one quarter of the year. In
 
 New,
 
 this court found it significant that “the allocation to one parent of approximately 50 more days of physical custody per year did not constitute a custodial preference....” 955 So.2d at 435. However, in the present case, unlike in
 
 New,
 
 the custody arrangement allocates to the wife approximately 200 more days of physical custody per year. The custody arrangement in the present case simply does not support the trial court’s judgment purporting to award the parties joint physical custody of the child. Rather, it appears that the wife was awarded sole physical custody of the child, subject to the visitation rights of the husband.
 
 Cf. Nauditt v. Haddock,
 
 882 So.2d 364, 367 (Ala.Civ.App.2003) (holding that a custody award granting “joint custody” to the parents and ordering that the child spend one third of his time with the mother and two thirds of his time with the father granted “joint physical custody,” as that term is defined in § 30-3-151). In fact, the husband states in his appellate brief that the trial court’s custody award “allocates the time that the child is in the physical custody of each parent in a manner similar to the [wife’s] having sole physical custody....” Therefore, we conclude that the wife was awarded sole physical custody of the child. Based on that holding, we hold that the trial court erred by ordering the wife, the custodial parent, to pay child support to the husband, the noncustodial parent.
 
 See Davenport v. Hood,
 
 814 So.2d 268, 276 (Ala.Civ.App.2000) (noting that noncustodial parents have a duty to support their children).
 

 Next, the wife argues that the trial court did not properly consider the evidence of the husband’s physical abuse of the wife in awarding the parties joint physical custody. However, our holding that the trial court’s judgment awarded the wife sole physical custody of the child pretermits discussion of this argument.
 
 See Favorite Market Store v. Waldrop,
 
 924 So.2d 719, 723 (Ala.Civ.App.2005) (stating that this court would pretermit discussion of further issues in light of dispositive nature of another issue). The wife does not indicate in her appellate brief before this court that she does not want the husband to have visitation with the child, and, at trial, the wife testified that she did not view the husband as a threat to the child and wished for the husband to have visitation. Therefore, this issue will not be discussed further.
 

 Next, the wife argues that the trial court’s judgment requiring her to repay the husband for the expenses he incurred in providing health insurance for the child is in error. Pursuant to the pendente lite order entered by the trial court, the wife was required to provide health insurance for the child until a final judgment was entered. The wife admittedly violated the pendente lite order and asked the husband to provide health insurance for the child. The husband complied. However, the wife provides no legal authority to support her argument, and, thus,
 
 *219
 
 we will not consider that argument on appeal:
 

 “Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s ... brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ The effect of a failure to comply with Rule 28(a)(10) is well established:
 

 “ ‘It is settled that a failure to comply with the requirements of Rule 28(a) ([10]) requiring citation of authority for arguments provides the Court with a basis for disregarding those arguments:
 

 “ ‘ “When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research. Rule 28(a) ([10]);
 
 Spradlin v. Birmingham Airport Authority,
 
 613 So.2d 347 (Ala.1993).”
 

 “
 
 ‘City of Birmingham v. Business Realty Inv. Co.,
 
 722 So.2d 747, 752 (Ala.1998).
 
 See also McLemore v. Fleming,
 
 604 So.2d 353 (Ala.1992);
 
 Stover v. Alabama Farm Bureau Ins. Co.,
 
 467 So.2d 251 (Ala.1985); and
 
 Ex parte Riley,
 
 464 So.2d 92 (Ala.1985).’
 

 “Ex parte Showers,
 
 812 So.2d 277, 281 (Ala.2001). ‘[W]e cannot create legal arguments for a party based on undeli-neated general propositions unsupported by authority or argument.’
 
 Spradlin v. Spradlin,
 
 601 So.2d 76, 79 (Ala.1992).”
 

 University of South Alabama v. Progressive Ins. Co.,
 
 904 So.2d 1242, 1247-48 (Ala. 2004).
 

 Lastly, the wife “requests ... a review of the division of marital debt.” It appears from her appellate brief that she is appealing the trial court’s judgment insofar as it assigns her responsibility for her student-loan debt and for the debt associated with the car. However, once again, the wife fails to provide this court with any legal authority to support her argument, and, thus, we will not consider that argument on appeal.
 
 Progressive,
 
 904 So.2d at 1247-48; Rule 28(a)(10), Ala. R. Civ. P.
 

 Conclusion
 

 Based on the foregoing, we reverse the trial court’s judgment insofar as it purported to award the parties joint physical custody and insofar as it ordered the wife to pay child support to the husband, and we remand the matter to the trial court so that it may enter a judgment awarding the wife sole physical custody of the child and eliminating the wife’s child-support obligation to the husband. In all other respects, the trial court’s judgment is affirmed.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 [1]
 

 . On her Form CS-41 "Child-Support-Obligation Income Statement/Affidavit,” the wife listed her monthly income as $1,235, which reflected only her unemployment benefits. On the parties' Form CS-42 "Child-Support Guidelines” from, prepared by the husband’s attorney, the wife’s monthly gross income was estimated at $4,225; the wife did not dispute that amount at the trial. That figure was reached by the husband’s attorney by taking the average of $150 per patient multiplied by 6 patients multiplied by 4.333 weeks per month ($3,899.70) and $150 per patient multiplied by 7 patients multiplied by 4.333 weeks per month ($4,549.65). Apparently, the husband’s attorney was attempting to estimate the wife’s income by taking the average of the wife's anticipated salary based on whether she saw six or seven patients in one week. However, there is nothing in the record to support using $150 as the amount the wife would earn per patient. The wife testified that she would earn only $125 per patient.
 

 [2]
 

 . The original judgment of the trial court erroneously ordered that the husband pay to the wife child support in the amount of $144.45 per month. However, the husband filed a postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., requesting that the trial court amend its judgment in order to correct the error. The trial court granted the husband’s postjudgment motion and corrected the error, as reflected above.
 

 [3]
 

 . On June 3, 2010, the wife filed another postjudgment motion. The trial court determined that the wife had not properly served her postjudgment motion on the husband and, thus, ordered her to do so before it would consider her postjudgment motion. Instead, the wife filed her notice of appeal on June 14, 2010. The wife then perfected service of her pending postjudgment motion on June 17, 2010. The husband filed a response to the wife's postjudgment motion, asserting that the wife had already filed a postjudgment motion upon which the trial court had ruled and, thus, that no further postjudgment motions were appropriate and that the trial court was without jurisdiction to consider the wife’s postjudgment motion' because the wife had already filed a notice of appeal. The trial court subsequently denied the wife’s post-judgment motion.