DONALDSON, Judge.
Michael Keith Bardolf ("the father") appeals from a judgment entered by the Coffee Circuit Court ("the trial court") denying his petition seeking to modify custody of the two daughters ("the children") of Lynnette Bosse Bardolf ("the mother") and the father. We affirm the judgment.
Facts and Procedural History
In November 2013, the trial court entered a judgment in case no. DR-12-900020 that, among other things, divorced the parties, granted the mother sole physical custody of the children, granted the father "liberal" visitation with the children, and ordered the father to pay child support ("the divorce judgment"). In the divorce judgment, the trial court described the different types of custody that are contained in § 30-3-151, Ala. Code 1975, including specific descriptions of joint *823 physical custody and sole physical custody. The trial court noted that both parties are "fit and proper parents" but that, based upon circumstances surrounding the mother's transfer of her military employment from Alabama to Oklahoma, it would be in the children's best interest for the mother to have sole physical custody.
On January 8, 2015, in case no. DR-12-900020.01, the trial court entered the first judgment modifying the parties' divorce judgment ("the first modification judgment"), which incorporated a November 2014 agreement of the parties. In that judgment, the trial court noted that the November 2014 agreement was reached following mediation that was ordered after the father filed a complaint seeking to "modify the divorce decree with regard to custody of the parties' minor children." The agreement states that both the mother and the father were represented by separate counsel in executing the agreement and that both the mother and the father "have read, understood, and agreed to the provisions of this instrument and have been fully informed of their rights" before signing the agreement. The parties' November 2014 agreement addressed in detail what the parties described as modifications to "visitation" with the children; in particular, it provided that, from January 2015 until May 2015, the father was granted, each month, week-long visitation with the children in Oklahoma, that each party was granted 28 days with the children in the summer, and that, beginning in August 2015 when the mother and children returned to Alabama, the parties agreed to "split weekdays" and alternate weekends with the children. The parties also agreed to terminate the father's child-support obligation beginning in June 2015, noting the revised custodial periods. Neither the agreement nor the first modification judgment addressed the physical custody of the children or the mother's status as sole physical custodian of the children.
On April 12, 2016, in case no. DR-12-900020.02, the trial court entered another judgment ("the second modification judgment") in proceedings the father had initiated by filing a petition for contempt and "modification of visitation." Like the first modification judgment, the second modification judgment incorporated a settlement agreement entered into by the parties that reflects that the mother and the father were represented by separate counsel in executing the agreement. The second modification judgment also contained what the parties described as a revised "visitation schedule" but, again, omitted any mention of the physical custody of the children. The second modification judgment provided "[t]hat all other agreed-upon and decided matters in the Final Decree [of Divorce] and Joint Stipulation Agreement remain in effect as laid out in those documents."
On September 27, 2016, the father filed a petition in the trial court in case no. DR-12-900020.03 ("the .03 action") seeking, among other things, "primary physical custody" of the children. The mother filed an answer and a counterclaim requesting, among other things, an award of "primary physical and legal custody" of the children.
On March 28, 2017, the trial court held a trial. M.R.B., the parties' 16-year-old daughter, testified that she would like the father to have "full custody" of her and her sister, asserting that the father is more able to care for their medical and educational needs. She also asserted that there was frequent fighting and verbal abuse at the mother's house. M.R.B. opined that she was old enough to make important life decisions for herself. M.R.B. testified that she is more comfortable talking with the father because she believes that "he's not going to go against what I decide." M.R.B. testified that the father *824 had been more involved in her education, that he had signed her up for an ACT college-entrance-exam preparation course, and that he had taken her on two college visits. M.R.B. admitted, however, that she had declined the mother's request to attend the college visits. M.R.B. also testified that the mother "belittles" the father and tells the children that the father is using parental alienation to drive a wedge between the mother and the children.
R.E.B., the parties' 14-year-old daughter, testified that she and her sister had asked the father to seek sole physical custody "[b]ecause we want, like, more freedom, like, for us to go, like, back and forth, and the medical stuff to be on him." According to R.E.B., there is more fighting at the mother's house and it is "more peaceful" at the father's house. R.E.B. testified that her relationship with the mother began deteriorating the night before they moved to Oklahoma in 2013.
L.S., the 17-year-old boyfriend of M.R.B., testified that he had often observed tension at the mother's house and opined that the children should live with the father.
The father testified that the children had approached him about requesting a change of custody. The father asserted that he has "watched [the children] come home, after being with their mom for a week, and spend a day and a half and all [he] can do is try to calm them down and let them decompress." The father testified that the mother had had final decision-making authority related to the children for the past five years and that he would like to have that authority. The father testified that he and the mother cannot effectively co-parent. The father testified that he had rules that he enforced with the children. When asked about R.E.B.'s multiple absences from school while in the father's care over the past seven months, the father testified that he had let the children miss school on occasions when he knew they would not be productive or when they needed to catch up on studying.
The father testified that, when she declines one of the children's requests, the mother often says "no" and responds with "[b]ecause I'm the parent," while, he said, he "take[s] the extra time to teach a lesson." The father opined that a custody modification "is the best way, unfortunately the only way left, for hopefully one day the girls to have a positive and healthy relationship with their mother."
The mother testified that she had had a difficult time co-parenting with the father. The mother opined that the father does not impose and enforce appropriate rules for the children. The mother testified that the children are often defiant, disobedient, and disrespectful, and she asserted that the father "encourages them and empowers them to be disobedient" and that he "doesn't do anything to discourage their behavior when those situations arise." A friend of the mother's also testified that she had witnessed both children be "very disrespectful" to the mother in public settings.
The mother testified that she generally does not call the children names and that she does not normally yell at them, unless they are being continually disrespectful. The mother testified that she loves and cares for the children. The mother admitted that she is "hard" on the children because she is trying to teach them how to be productive women in society. The mother believes that she and the children are facing a "natural conflict between a mother and a daughter at this age."
On August 10, 2017, following a trial, the trial court entered a judgment in the .03 action that provides, in pertinent part:
*825 "The court taking judicial notice of its prior Judgments finds that in the original Judgment of Divorce the Mother and Father were awarded joint legal custody of the children and the Mother was awarded sole physical custody. The Father was awarded extensive visitation based upon distance of the parties at the time. On January 8, 2015, in a pending action, the court entered a Judgment modifying visitation by adopting and incorporating a Stipulation and Agreement of the parties. The agreement did not modify the Mother's award of sole physical custody. On April 12, 2016, the court in another Complaint to Modify adopted and incorporated into its Final Judgment the agreement of the parties as to visitation. The agreement stated 'That all other agreed upon and decided matters in the Final Decree [of Divorce] and Joint Stipulation Agreement remain in effect as laid [out] in [those] documents.' The agreement adjudged on April 12, 2016, did not modify custody.
"This custody modification action involves two (2) female minor children [M.R.B.], d/o/b July 13, 2000 (age 17), and [R.E.B.], d/o/b January 13, 2003 (age 14).
"Based on the prior Judgment awarding the Mother sole physical custody of the minor children the standard set out in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), shall apply. To justify a modification of child custody of a preexisting Judgment, the Petitioner must demonstrate that there has been a material change of circumstances since the Judgment was entered and it is in the best interest of the child that custody be modified in that the change of custody will materially promote the child's welfare and the change of custody would outweigh any disruptive effect of the change of custody.
"The evidence and testimony in this case reveals at most a strained relationship between the two (2) teenage minor girls and their Mother who is ... retired from the United States Army. The evidence further reveals that the strained relationship arises due to the two (2) minor children are not ... pleased with the rules and discipline methods of the Mother. The evidence reveals that the minor children, since the move from Oklahoma back to Enterprise, spend almost equal time with both parents pursuant to the agreement of the Mother and Father. The evidence and testimony reveals that the Father does not seek to communicate with the Mother regarding the education and welfare of the children. Joint legal custody means that both parents have equal rights and responsibilities for major decisions concerning the children, including, but not limited to, the education, health care, and religious training of the children. The evidence reveals that the Father has taken the oldest child on college visits without communicating with the Mother. The evidence reveals ... the youngest child had ten (10) unexcused school absences in a seven (7) month period during the time [she] was with her Father. The testimony was that if she is not feeling good her dad does not make her go to school. [The youngest child] feels more freedom at Father's house. The evidence revealed that both parents have allowed extra ... visitation with the other parent. There has been evidence of the children refusing to abide by the visitation schedule and the Father not encouraging support for enforcement.
"CONCLUSION
"The court finds that there is a material change in circumstances based on the strained relationship between the two (2) minor children and the Mother.
*826 The evidence does not support [a finding] that a change of custody would promote the welfare and be in the best interest of the minor children. The co-parenting of joint legal custody with both parents having frequent and continuing control with the minor children is working. No parenting situation involving parents and children will ever be perfect. The minor children are making good grades in school. It appears at times the parents want what is in their best interest and not what is in the best interest of the children. Both parents have different parenting methods and skills that may always create issues; however, these are the same issues that would arise if the parents were still married to each other. The testimony clearly revealed that both the Mother and Father are good parents and that neither would make decisions with a purpose to harm the children.
"The Mother and Father should be thankful that they have raised such healthy, educated and well-rounded children and both should continue to work together to provide stable, loving, safe and secure environment for the children."
The trial court denied the father's petition to modify custody and the mother's counterclaim seeking a modification of custody. The father timely filed a notice of appeal to this court on September 1, 2017.
Discussion
The father first argues that the trial court incorrectly applied the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), rather than the standard set forth in Ex parte Couch, 521 So.2d 987 (Ala. 1988), to the issue of modification of custody. The determination of whether the trial court applied the correct modification standard is a question of law, which this court reviews de novo. See Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994).
"If one parent has previously been granted primary physical custody ..., then an existing custody arrangement will be modified only if the modification materially promotes the best interests and welfare of the child. Ex parte McLendon, 455 So.2d 863, 865-66 (Ala. 1984)." Ex parte Johnson, 673 So.2d 410, 413 (Ala. 1994).
The father argues that, although the divorce judgment granted the mother sole physical custody of the children, the subsequent modification judgments modified physical custody of the children and, as a result, the parties ultimately shared equal time with the children on an alternating weekly basis. The father also asserts that "the sole physical custody designation in previous orders did not accurately reflect the true nature of the parties' practiced custodial arrangement." In support of his argument, the father cites New v. McCullar, 955 So.2d 431, 436 (Ala. Civ. App. 2006), and E.F.B. v. L.S.T., 157 So.3d 917 (Ala. Civ. App. 2014).
In New v. McCullar, a father sought a modification of a judgment that had designated the mother and the father as having "joint physical custody" of a child. The judgment also had designated the child's primary residence to be with the mother. 955 So.2d at 432. The trial court applied the McLendon standard, apparently based in part on its finding that the mother had the child in her custody for a majority of the time each month. This court held that "the express declaration that the parties were awarded joint physical custody" was not affected by the designation of a primary residence in the judgment, that the length of time the child had been with the mother was not "material," and that the McLendon standard was inapplicable because the parties had shared joint physical custody. Id. at 435-36. Likewise, in *827 E.F.B. v. L.S.T. , a father sought to modify a judgment that had designated the mother and the father as having joint physical custody but that also had designated the father as being the primary physical custodian. Following New, this court held that, because the parties had been designated by the court as having joint physical custody, Ex parte McLendon did not apply to the modification proceedings. E.F.B., 157 So.3d at 923.
Unlike the judgments sought to be modified in New and E.F.B., the divorce judgment of the parties in this case directly and unequivocally granted physical custody to one party-the mother. The parties' November 2014 agreement that was incorporated into the first modification judgment addressed in detail what the parties described as modifications to "visitation" with the children and also addressed issues of child support, health insurance, and the exchange of quitclaim deeds to certain properties, but it did not address physical custody of the children. Further, the first modification judgment states that "[a]ll other relief not addressed ... is denied." The second modification judgment, entered on April 12, 2016, also incorporated the parties' agreement that, like the previous agreement, contained what the parties described as a revised "visitation schedule," but, once again, omitted any mention of the physical custody of the children. The agreement stated that "all other agreed-upon and decided matters in the [Final Decree [of Divorce] and Joint Stipulation Agreement remain in effect as laid out in those documents."
Although the two modification judgments enlarged the father's visitation with the children to an amount equal with the mother's custodial periods, the parties did not choose to submit any modification of physical custody to the trial court for approval. Accordingly, the designation of the physical custodian of the children had not changed since the entry of the divorce judgment, and the trial court correctly applied the McLendon standard to the father's modification request.
"The custody-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), requires that
" 'the noncustodial parent seeking a change of custody must demonstrate (1) "that he or she is a fit custodian"; (2) "that material changes which affect the child's welfare have occurred"; and (3) "that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child." Kunkel v. Kunkel, 547 So.2d 555, 560 (Ala. Civ. App. 1989) (citing, among other cases, Ex parte McLendon, 455 So.2d 863, 865-66 (Ala. 1984) (setting forth three factors a noncustodial parent must demonstrate in order to modify custody) ).'
" McCormick v. Ethridge, 15 So.3d 524, 527 (Ala. Civ. App. 2008). It is not sufficient for a noncustodial parent seeking a modification of custody to show that he or she is a fit custodian. Id. The noncustodial parent must prove all three McLendon factors in order to warrant a modification of custody. Id."
Walker v. Lanier, 180 So.3d 39, 42 (Ala. Civ. App. 2015). Furthermore, because the trial court entered its judgment after a trial, the ore tenus standard of review applies.
" ' "Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440 (Ala. Civ. App. 1989), and Vail v. Vail, 532 So.2d 639 (Ala. Civ. App. 1988), and we will not *828 reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343 (Ala. Civ. App. 1990) ; Flowers v. Flowers, 479 So.2d 1257 (Ala. Civ. App. 1985)." ' "
Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996) (quoting Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting in turn Phillips v. Phillips, 622 So.2d 410, 412 (Ala. Civ. App. 1993) ).
The father argues that he presented sufficient evidence to overcome the stringent McLendon standard. As explained above, the trial court found that, although the strained relationship between the mother and the children constituted a material change in circumstances, the evidence did not demonstrate that a change of custody would promote the welfare and be in the best interest of the children. The trial court specifically found that the parents employed different parenting styles that could potentially create issues but that the children were doing well having frequent contact with both parents.
The father points to the children's testimony indicating that the mother frequently raises her voice and directs harsh and abusive language toward the children. The mother testified that she had, on occasion, raised her voice when the children were continually disobedient or disrespectful but that she did not generally do so. The credibility of the testimony and the weight to be given to testimony found to be credible were matters for the trial court to determine after personally observing the witnesses. See Dunn v. Dunn, 972 So.2d 810, 815 (Ala. Civ. App. 2007) (explaining that the trial court is in the best position to evaluate a witness's demeanor and credibility).
The father also points to the children's testimony that they wanted to live with the father and that they wished to have time away from the mother to allow them to repair their relationship with the mother. Although "a trial court can and should consider the wishes of a child involved in a custody dispute as one of a myriad of factors when making its decision[,] the child's wishes are ... not determinative of the issue." C.E. v. C.C.H., 922 So.2d 934, 937 (Ala. Civ. App. 2005). The mother testified that she loves and cares for the children and that, because of their ages, they are facing a natural conflict that occurs between mothers and teenage daughters. The mother also testified that the father encourages and empowers the children to disobey and disrespect her. The trial court could have believed the mother's testimony and, as a result, could have determined that placing the children in the father's sole physical custody would only further strain the relationship between the mother and the children and that a change of custody would not "materially promote[ ]" the children's "best interest and welfare." McLendon, 455 So.2d at 866.
The trial court had the opportunity to witness the mother, the father, and both children testify, and the ore tenus "presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases." Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001). The trial court correctly applied the McLendon standard, and its detailed findings are supported by evidence presented that the trial court could have found to be credible. Therefore, we affirm the trial court's judgment.
AFFIRMED.
Pittman and Moore, JJ., concur.
Thomas, J., dissents, with writing, which Thompson, P.J., joins.