THOMAS, Judge, dissenting.
*829 I respectfully dissent because I believe that today's decision is in direct conflict with New v. McCullar, 955 So.2d 431 (Ala. Civ. App. 2006) ; and E.F.B. v. L.S.T., 157 So.3d 917 (Ala. Civ. App. 2014). See Rule 39(a)(1)(D), Ala. R. App. P.
Michael Keith Bardolf ("the father") and Lynnette Bosse Bardolf ("the mother") are the divorced parents of two daughters ("the children"). On appeal, the father first argues that the Coffee Circuit Court erred by applying the custody-modification standard set out in Ex parte McLendon, 455 So.2d 863 (Ala. 1984) ("the McLendon standard"), rather than the best-interest standard set out in Ex parte Couch, 521 So.2d 987, 989 (Ala. 1988). In both New and E.F.B., this court determined that the McLendon standard did not apply to custody situations that are, in my opinion, similar to the one before us. Indeed, although referred to as a modification of visitation rather than a modification of custody, the judgments entered in the previous modification actions-case no. DR-12-900020.01 ("the .01 action") and case no. DR-12-900020.02 ("the .02 action")-resulted in the parents' sharing approximately equal custodial periods for more than two years.
In E.F.B., we explained:
"In New v. McCullar, 955 So.2d 431, 435-36 (Ala. Civ. App. 2006), this court determined that the McLendon standard did not apply to a judgment like the one before us in this case. This court stated:
" 'The central question in this case is which standard- McLendon or Couch-should be applied. If the divorce judgment awarded primary or sole physical custody to the mother, the McLendon standard applies. If the divorce judgment awarded joint physical custody, the best-interests standard of Couch applies. In this case, we conclude that the trial court incorrectly required the father to meet the McLendon standard in order to obtain a modification of the divorce judgment as it relates to custody.
" 'We begin our analysis with Alabama's joint-custody statute, Ala. Code 1975, §§ 30-3-150 through -157. Section 30-3-151(3) defines "joint physical custody" as
" ' "[p]hysical custody ... shared by the parents in a way that assures the child frequent and substantial contact with each parent. Joint physical custody does not necessarily mean physical custody of equal durations of time."
" 'The custody arrangement set forth in the parties' agreement and incorporated into the divorce judgment fits within this statutory definition of "joint physical custody." The agreement provided that the parties would share "joint legal and joint physical custody" of the child. The judgment provided for the child to reside with the father almost one half of every month during the school year and approximately one half of each summer. It also provided that the child would spend approximately one half of certain designated holiday periods with the father. That arrangement clearly "assures the child frequent and substantial contact with each parent." § 30-3-151(3).
" 'The evidence in the record also shows that both parties in fact had frequent and substantial contact with the child; both parties lived in the same part of Baldwin County, and the father frequently took the child to, or picked him up from, school and various *830 activities. There is also evidence in the record indicating that the child frequently stayed overnight with the father and that both parties were involved with the child's school and extracurricular activities.
" 'In light of the foregoing factors, we do not consider it material that the mother had custody for a majority of the time each month. The statute does not require equal durations of time, and we have previously determined that the allocation to one parent of approximately 50 more days of physical custody per year did not constitute a custodial preference so as to warrant the application of the McLendon standard. Rehfeld v. Roth, 885 So.2d 791 (Ala. Civ. App. 2004). See also Reuter v. Neese, 586 So.2d 232 (Ala. Civ. App. 1991) ( Couch standard applied to an arrangement under which one parent had primary custody during the school year and the other parent had primary custody during the summer).
" 'Similarly, under the circumstances of this case, we do not find that the express declaration that the parties were awarded joint physical custody was contradicted by the statement in the divorce judgment that "the child's primary residence shall be with [the mother]" or by the references to the father's "visitation." To the extent that the divorce judgment is internally inconsistent, we conclude that it in fact created a joint-physical-custody arrangement, as defined by § 30-3-151(3).'
"(Footnotes omitted.)"
157 So.3d at 922-23 (emphasis added).
The judgments entered in the previous modification actions fail to use the custody terminology chosen by our legislature. Regardless, an express provision of the judgment in the .01 action reads: "Starting on August 1st of 2015, the parties shall have physical custody of the minor children," and, thereafter, the parties shared alternating weekly custody for two years, which, according to prior opinions of this court, amounts to "a joint-physical-custody arrangement, as defined by § 30-3-151(3)." New, 955 So.2d at 436 ; E.F.B., 157 So.3d at 923. The award of "physical custody" to the parties altered the earlier award designating the mother as the "primary" physical custodian; therefore, unlike the main opinion, I conclude that, like in New and E.F.B., the McLendon standard has no application in this case.
"Where, as in the present case, there is a prior judgment awarding joint physical custody, ' "the best interests of the child" ' standard applies in any subsequent custody-modification proceeding. Ex parte Johnson, 673 So.2d 410, 413 (Ala. 1994) (quoting Ex parte Couch, 521 So.2d 987, 989 (Ala. 1988) ). To justify a modification of a preexisting judgment awarding custody, the petitioner must demonstrate that there has been a material change of circumstances since that judgment was entered and that ' "it [is] in the [child's] best interests that the [judgment] be modified" ' in the manner requested. Nave v. Nave, 942 So.2d 372, 376 (Ala. Civ. App. 2005) (quoting Means v. Means, 512 So.2d 1386, 1388 (Ala. Civ. App. 1987) )."
Ex parte Blackstock, 47 So.3d 801, 804-05 (Ala. 2009).
I would reverse the judgment and remand the cause to the trial court, instructing it to apply the proper standard to the father's petition to modify custody. See Rehfeld v. Roth, 885 So.2d 791, 796 (Ala. Civ. App. 2004) (explaining that, when a trial court erroneously applies the more stringent standard and denies a modification, the proper approach is to reverse the *831 judgment and remand the cause for the trial court to apply the proper standard); and Davis v. Davis, 753 So.2d 513, 515 (Ala. Civ. App. 1999). In light of the foregoing, I would pretermit the father's other arguments. See Favorite Mkt. Store v. Waldrop, 924 So.2d 719, 723 (Ala. Civ. App. 2005).
Thompson, P.J., concurs.